**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Harold UNDERWOOD,**
**Defendant–Appellant.**

**No. 90–3220.**

United States Court of Appeals,
Tenth Circuit.

July 8, 1991.

---

Kenneth W. Starr, Sol. Gen., Dept. of Justice, Washington, D.C., Lee Thompson, U.S. Atty., Richard L. Hathaway, Asst. U.S. Atty., Topeka, Kan., for plaintiff-appellee.

Robert D. Hecht of Scott, Quinlan & Hecht, Topeka, Kan., for defendant-appellant.

Before TACHA, BALDOCK and EBEL, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant James Harold Underwood was a participant in a large marijuana growing and processing enterprise with fields in six Kansas counties.[1] He pled guilty to one count of conspiracy to plant, cultivate, grow, harvest and possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 846, 802 & 812. The Sentencing Guidelines applied because the offense occurred after November 1, 1987. *See* 28 U.S.C. § 994(a); United States Sentencing Commission, *Guidelines Manual* (Nov. 1990) [hereinafter U.S.S.G.]. The district court sentenced defendant to 235 months imprisonment, the minimum guide-

---

1. This is a companion case to *United States v. Shewmaker,* 936 F.2d 1124 (10th Cir.1991) and *United States v. Bickett,* No. 90–3214, 937 F.2d 617 (table) unpub. order & judgment (10th Cir. July 3, 1991).

line term for defendant's offense category. Defendant appeals, raising guideline issues. We remand for resentencing in accordance with this opinion.

■ Defendant argues that the district court erred in failing to state the reasons for the sentence. Our jurisdiction to review this issue arises from 18 U.S.C. § 3742(e)(1), which provides for appellate review of a sentence imposed in violation of law. Defendant contends that the court violated 18 U.S.C. § 3553(c), which provides:

> (c) Statement of reasons for imposing a sentence.—The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—
>
> > (1) is of the kind, and within the range, described in subsection (a)(4) [a guideline sentence], and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or
> >
> > (2) is not of the kind, or is outside the range, described in subsection (a)(4) [a guideline departure], the specific reason for the imposition of a sentence different from that described.

In this case, the statute required the district court to articulate its sentencing rationale with two levels of particularity. First, subsection (c) required the court to state the general reason for the guideline sentence imposed. Second, because defendant's guideline range exceeded twenty-four months (235 to 293 months), subsection (c)(1) required the district court to state its reason for imposing the sentence "at the particular point within the range." Subsection (c)(2) was inapplicable because the district court did not depart from the guidelines. Although it is clear that the district court did not comply with subsection (c)(1), remand on this issue alone would be pointless because the defendant could not have received a more lenient sentence within the applicable guideline range; he received the guideline range minimum of 235 months. On remand, defendant would be left without a remedy. We therefore center our inquiry on the requirement of

subsection (c) that the court state the general reason for the sentence imposed.

In calculating defendant's offense level, the court adopted the presentence report including the recommendation of a § 2D1.1(b)(1) two-point upward adjustment for firearm possession. IV R. 48–49. In passing sentence, however, the court made no reference to defendant's firearm possession. Instead, the court incorporated the presentence report as a whole into its findings, referred to the applicable guideline range of 235 to 293 months, and sentenced defendant to a 235 month prison term "to reflect the seriousness of the offense and to provide punishment for the offense." IV R. 47. Defendant contends that a statement from the bench regarding the firearm enhancement was required by § 3553(c).

We broach this issue with the knowledge that Congress did not intend the § 3553(c) statement of reasons to be "a legal battleground" for challenges to sentences which are imposed within an appropriate guideline range. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 79, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3262–63. *See also United States v. Garcia,* 919 F.2d 1478, 1481–82 (10th Cir.1990) (discusses S.Rep. No. 225 in holding that court did not have jurisdiction to "scrutinize sentencing justifications offered by the district court"). And we also take note of the legislative history which indicates that the statement of reasons should not be "subjected to such legalistic analysis that will ... encourage judges to give reasons in a standardized manner." S.Rep. No. 225 at 3263. *See also United States v. Georgiadis,* 933 F.2d 1219, 1223 (3d Cir.1991) (emphasizing Congressional intent to avoid "standardized sentencing statements"); *United States v. Beaulieu,* 900 F.2d 1531, 1535–36 (10th Cir.) (particularized sentencing statements are not required in the context of upward adjustments within the guidelines) (citing *United States v. Duque,* 883 F.2d 43 (6th Cir.1989); *United States v. Reed,* 882 F.2d 147 (5th Cir.1989) and *United States v. Mejia–Orosco,* 867 F.2d 216 (5th Cir.), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989)),

*cert. denied,* —— U.S. ——, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990). However, in this case we are not considering whether the court gave adequate reasons for its imposition of a sentence within an admittedly appropriate guideline range; such a review would be precluded. *See Garcia,* 919 F.2d at 1481–82. Instead, we consider whether the court gave *any* reason for the sentence imposed. *See* 18 U.S.C. § 3553(c). Only after this question is answered may we discern whether the court applied the appropriate guideline range.

Our concern over the court's reasoning arises because of the unexplained § 2D1.1(b)(1) firearm possession enhancement. Section 2D1.1(b)(1) provides for a two-point upward adjustment for possession of a firearm during a drug offense, and the commentary indicates that the section applies as well to defendant's conspiracy to commit a drug offense. *See United States v. Goddard,* 929 F.2d 546, 548 (10th Cir.1991) (citing U.S.S.G. § 2D1.1, comment. (n.3), and § 2D1.4, comment. (n.3)). " 'The ... adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the [conspiracy] offense.' " *Goddard,* 929 F.2d at 548 (quoting U.S.S.G. § 2D1.1(b)(1), comment. (n.3)). The presentence report makes it clear that weapons were present in this case. Specifically, the report indicates that the government seized weapons located on several of the marijuana farms involved in the overall conspiracy and that defendant acted to some unknown extent as a supervisor in the conspiracy. Also, the report indicates that the government seized a .22–caliber semiautomatic assault rifle from a pickup truck which was registered under defendant's name. The defendant's fingerprints were found on a beer can in the truck, but not on the rifle. Defendant contends that he had no knowledge of either the weapons found on the farms or the rifle in his truck. Regarding the rifle, he explains that he lent the truck to his common law wife who in turn lent the truck to her brother. The brother-in-law, according to defendant, placed the rifle under the pickup truck seat without defendant's knowledge.

Defendant concedes that weapons were present, but argues that the government did not prove by a preponderance of the evidence that he knew of either the weapon in his pickup truck or the weapons seized on the farms. Three circuit courts, interpreting a prior version of the guidelines, have held that § 2D1.1(b)(1) requires a finding of scienter. *See United States v. Fiala,* 929 F.2d 285, 289 (7th Cir.1991); *United States v. Suarez,* 911 F.2d 1016, 1021 (5th Cir.1990); *United States v. Burke,* 888 F.2d 862 (D.C.Cir.1989). As the first court to address the issue, the *Burke* court relied principally on guideline § 1B1.3(a) which contains the general governing principles for the application of the firearm enhancement and the other specific offense characteristics in § 2. At the time of the *Burke* decision, § 1B1.3 provided:

> Relevant Conduct (Factors that Determine the Guideline Range)
>
> The conduct that is relevant to determining the applicable guideline range includes that set forth below.
>
> (a) *Chapters Two (Offense Conduct) and Three (Adjustments* ). Unless otherwise specified, ... (ii) *specific offense characteristics* ... shall be determined on the basis of the following.
>
>> (1) all acts and omissions committed or aided and abetted by the defendant, *or for which the defendant would be otherwise accountable,* that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offence, or that otherwise were in furtherance of that offense;
>>
>> . . . .
>>
>> (3) all harm or risk of harm that resulted from the acts or omissions specified in subsection[ ] (a)(1) ..., *if the harm or risk was caused intentionally, recklessly or by criminal negligence....*
>>
>> . . . .

U.S.S.G. § 1B1.3 (Jan.1988) (emphasis supplied). The *Burke* court held that subsection (3) above requires a court to make a

finding regarding scienter before adjusting pursuant to § 2D1.1(b)(1). We agree that the plain language of the guideline as quoted above requires a finding of scienter; however, the scienter proviso in subsection (3) was deleted effective November 1989—before defendant was sentenced. Under the new guideline it is clear that scienter is not required; simple possession alone will suffice for a firearm enhancement. *See Fiala,* 929 F.2d at 289; *Suarez,* 911 F.2d at 1021. Nevertheless, we apply the old language, as interpreted by the *Burke* court, to this case because the old guideline is less onerous for the defendant and was in effect at the time of the offense.[2] Normally, district courts are to apply the sentencing guidelines in effect at the time of sentencing rather than the guidelines in effect on the date of the offense. *See* 18 U.S.C. § 3553(a)(4) & (5). But the *ex post facto* clause prohibits retroactive application of a changed guideline if the change disadvantages the defendant. *See Miller v. Florida,* 482 U.S. 423, 430, 433, 107 S.Ct. 2446, 2451, 2453–54, 96 L.Ed.2d 351 (1987). *See also United States v. Smith,* 930 F.2d 1450, 1452 n. 3 (10th Cir.1991). Given the decreased burden of the government, we have little trouble concluding that retroactive application of the changed guideline would disadvantage the defendant in this case. *See Fiala,* 929 F.2d at 289 (applying the old guideline requirement of scienter because retroactive application of changed guideline disadvantaged defendant); *Suarez,* 911 F.2d at 1021–22 (same, with discussion of *ex post facto* clause).

■ Under the *Burke* analysis, a defendant who personally possesses a firearm during a drug offense is subject to the § 2D1.1(B)(1) adjustment only if he knowingly possessed the weapon or if he was criminally negligent in his unwitting possession. *Burke,* 888 F.2d at 867–68. And criminal negligence may be established if the defendant, "in addition to having *direct physical control of the weapon,* . . . failed to take reasonable steps that would have disclosed the weapon in question." *Id.* at 868 (emphasis in original). Defendant contends that the government presented no proof of his knowledge or his criminal negligence with respect to the assault rifle which the authorities seized from his truck. Regarding the other weapons which were seized on the farms, defendant contends that he had no knowledge of the weapons and that the possession of such weapons by his codefendants was not reasonably foreseeable. Defendant has recited the correct test for imputation of a codefendant's weapons possession to a defendant for purposes of a § 2D1.1(b)(1) enhancement. Under § 1B1.3(a)(1), quoted above, a defendant's specific offense characteristics, including the firearm enhancement, are to be determined on the basis of "all acts and omissions committed or aided and abetted by the defendant, *or for which the defendant would otherwise be accountable.*" U.S.S.G. § 1B1.3(a)(1). The commentary suggests that an act "for which the defendant would otherwise be accountable" includes any act by a codefendant taken "in furtherance of the execution of [a] jointly undertaken criminal activity [if the act] was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n. 1). We recently endorsed the commentary's interpretation, and, furthermore, held that reasonable foreseeability of weapons possession by a codefendant may be inferred if the codefendant knowingly possessed the weapon. *See United States v. McFarlane,* 933 F.2d 898, 899 (10th Cir.1991) (citing *United States v. Aguilara–Zapata,* 901 F.2d 1209, 1215 (5th Cir.1990)).[3] *See also*

---

**2.** The indictment period for the present offense ended in July 1989, before the effective date of the amendment.

**3.** In *Goddard,* we held that a coconspirator's weapons possession could be attributed to the defendant pursuant to § 2D1.1(b)(1) without reliance on the reasonable foreseeability test of § 1B1.3(a)(1) because the commentary to § 2D1.1(b)(1) suggests that the provision is ap-

plicable directly to conspiracies. 929 F.2d at 548. This is not to say that § 1B1.3(a)(1) is inapplicable in all conspiracy cases. In the *Goddard* case, the defendant's sentence was enhanced "because of his knowing and voluntary complicity with the possessor of the gun where he knew the gun was present and it was connected to the conspiracy." *Id.* at 549. In the present case, it is not clear whether defendant knew of the weapons possession by coconspira-

*United States v. Williams,* 894 F.2d 208 (6th Cir.1990); *United States v. White,* 875 F.2d 427, 433 (4th Cir.1989). Defendant has anticipated our holding in *McFarlane,* arguing that the government did not demonstrate that any of his coconspirators knowingly possessed any of the firearms seized on the farms. Therefore, defendant contends, the court erred in attributing the weapons possession to him.

■■■ For § 2D1.1(b)(1) to apply, the government must prove weapons possession by a preponderance of the evidence. *See Goddard,* 929 F.2d at 549. And we review the district court's determination for clear error. *Id.* at 548–49 (citing 18 U.S.C. § 3742(e)). *See also McFarlane,* 933 F.2d 898, 899 (knowledge of codefendant's possession is a factual issue to be reviewed for clear error). "[W]e will not reverse the district court unless the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Beaulieu,* 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990). In this case, however, we have no factual finding to review. The court simply stated the guideline range and referred to the accuracy of the presentence report.

■■ The presentence report documented the firearms involved in this case, but it made no reference to the required finding that the defendant knowingly possess the firearms or that a codefendant's possession be reasonably foreseeable. Although our cases clearly do not require the district court to make particularized findings for guidelines adjustments such as § 2D1.1(b)(1), at a minimum, the court must make a finding that the requirements for the adjustment have been satisfied. For example, in *Beaulieu,* the leading Tenth Circuit case in this area, the court below dealt with a § 3C1.1 adjustment for obstruction of justice resulting from a defendant's perjurious testimony. 900 F.2d

at 1532. At the sentencing hearing, the district court in that case found:

> The evidence at trial concerning [defendant], was overwhelming in the Court's view. And the jury flatly rejected the testimony that he provided.
>
> The Court does not criticize defense counsel for putting [defendant] on the stand....
>
> But the [defendant's] testimony was flatly contradicted by the other evidence at trial.
>
> And the Court believes that a defendant who testifies falsely at trial should be subject to an increased offense level. And I am more than adequately persuaded that the defendant perjured himself during his testimony at trial.

*Id.* at 1535. We held that "the Guidelines do not require 'findings' for adjustments more specific than were the reasons here expressed by the trial judge at sentencing." In no way, however, did we hold that the trial court was not required to make any finding regarding the guideline adjustment. *See also United States v. Maldonado-Campos,* 920 F.2d 714, 719 (10th Cir.1990) (district court was not required to announce reasons supporting a factual finding concerning § 3D1.2, but was at least required to make a finding). The Ninth Circuit has cited *Beaulieu* for the proposition that 18 U.S.C. § 3553(c) (exclusive of subsections (c)(1) and (c)(2)) requires that the district court at least state "its general reasons for its imposition of the particular sentence...." *United States v. Lockard,* 910 F.2d 542, 544 (9th Cir.1990). And the Third Circuit has held that "[t]his general requirement is satisfied when a district court indicates the applicable Guidelines range, and how it was chosen." *Georgiadis,* 933 F.2d 1219, 1223. We agree with the courts that have held that § 3553 subsection (c), without regard to subsections (c)(1) and (c)(2), requires a district court to make a general statement of its reasoning for the sentence imposed. Otherwise, we would be left in a "zone of speculation" on appellate

tors; thus, it is proper to look to the § 1B1.3 reasonable foreseeability test as articulated in

*McFarlane,* No. 933 F.2d 898, 899.

review. *United States v. Donaldson,* 915 F.2d 612 (10th Cir.1990).

Certainly the statement of reasoning does not have to be particularized, but, in this case, the court made no statement. It referenced only to the accuracy of the presentence report as a whole. We do not know whether the firearm enhancement resulted from the weapon found in defendant's truck or the weapons found on the farms or both, and upon review of the record we may only speculate as to whether the district court applied the correct legal standard for attributing the weapons to defendant. Regarding the court's reference to the accuracy of the presentence report, we are dubious about the probation officer's awareness of the proper standard for a § 2D1.1(b)(1) firearm adjustment. We therefore REMAND for resentencing.[4] Upon remand, the district court is instructed simultaneously to vacate the prior sentence and resentence with at least a general statement noting the appropriate guideline range and how it was calculated. Also, the court is instructed to make a finding as to whether defendant knowingly possessed weapons or if the weapons possession by his codefendants was reasonably foreseeable. If the court finds that a § 2D1.1(b)(1) firearm adjustment is not indicated, and therefore sentences defendant to a lesser term, the court is instructed to comply with 18 U.S.C. § 3553(c)(1)'s requirement of a statement of reasons for the particular point chosen within the guideline range.

---

4. Defendant also contends that his constitutional due process rights were violated at the sentencing hearing by hearsay testimony regarding his drug related activities while on release after his arrest for this offense. Upon careful review of the testimony, we find that it does not lack the "minimal indicium of reliability" required by the due process clause. *Beaulieu,* 893 F.2d at 1181 (citing *United States v. Sunrhodes,* 831 F.2d 1537, 1543 (10th Cir.1987) and U.S.S.G. § 6A1.3, comment.). In any event, the district court expressly stated that the testimony had no bearing on the sentencing determination.