UNITED STATES of America, Plaintiff–Appellee,

v.

Troy T. COLEMAN, Defendant–Appellant.

No. 90–5207.

United States Court of Appeals, Tenth Circuit.

Oct. 16, 1991.

---

William E. Hughes, Tulsa, Okl., for defendant-appellant.

James L. Swartz, Asst. U.S. Atty., Tulsa, Okl. (Tony M. Graham, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, LOGAN, and BALDOCK, Circuit Judges.

HOLLOWAY, Circuit Judge.

Troy T. Coleman appeals his sentence of 360 months' imprisonment imposed under the sentencing guidelines applicable to offenses involving drugs. A jury in the Northern District of Oklahoma found Coleman guilty of conspiring to possess a controlled substance with intent to distribute, in violation of 21 U.S.C. § 846, and of possessing a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Coleman has argued that in applying the guidelines the trial court erred in computing the offense level and the criminal history score. We affirm.

I

At trial, the government attempted to prove that Coleman participated in the efforts of a California-based drug distribution organization to expand its operations to Tulsa. Coleman was among four co-defendants named in an indictment filed on August 1, 1989.[1] In addition to the two counts on which Coleman was sentenced, the indictment charged Coleman in a third count with using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1).

Following Coleman's conviction on the jury verdict on all three counts in March 1990, the trial court granted him a new trial. At the close of the second trial in July 1990, a jury returned a guilty verdict on the conspiracy and possession counts, but found Coleman not guilty of the firearms offense. On September 19, 1990, the trial judge imposed a sentence that included prison terms of 360 months for each conviction, to be served concurrently, and 10 years of supervised release on each count to run concurrently.

Following the first trial, Coleman was convicted in a separate case of violating 18 U.S.C. § 1513(a)(1) by retaliating against one of the government witnesses. Coleman was charged with that offense in an indictment returned on April 5, 1990. Prior to his sentencing on the drug-related offenses, Coleman was sentenced to serve a five-year prison term for the witness retaliation conviction.

II

We review *de novo* in considering alleged errors of law in a trial court's application of the sentencing guidelines. *United States v. Kirk,* 894 F.2d 1162, 1163 (10th Cir.1990). We must give due deference to a sentencing judge's application of the guidelines to the facts. 18 U.S.C. § 3742(e) (1988); *United States v. Banashefski,* 928 F.2d 349, 351 (10th Cir.1991). In reviewing a district court's application of the guide-

---

1. For our decisions in the appeals of the related prosecutions, see *United States v. Matthews,* 942 F.2d 779, 785 (10th Cir.1991) (affirming convictions for conspiracy and possession with intent to distribute cocaine base, reversing conviction for use of firearms in drug trafficking as well as sentence); *United States v. Brooks,* 940 F.2d 598, 601–02 (10th Cir.1991) (remanding for resentencing for possession of cocaine base as misdemeanant); *United States v. Puryear,* 940 F.2d 602, 604 (10th Cir.1991) (remanding for resentencing for possession of cocaine base as misdemeanant).

lines, we consider first the language of the guidelines. *United States v. Smith*, 900 F.2d 1442, 1446 (10th Cir.1990). In resolving ambiguities in the guidelines, we consider the notes and illustrations in the accompanying commentary. *Banashefski*, 928 F.2d at 351.

Defendant Coleman argues that the trial court erred in reaching a factual conclusion that the conspiracy involved at least 500 grams of crack cocaine. Concluding that the conspiracy involved at least 500 grams of cocaine base, the probation office assigned to Coleman a base offense level of 36. XI Supp.R. 3, para. 10, 4, para. 14; *see* United States Sentencing Comm'n, *Guidelines Manual* § 2D1.1(a)(3), .1(c)(4) (1989) [hereinafter *U.S.S.G.* ] (Drug Quantity Table).[2] After hearing the defendant's objections, the trial judge concluded that the evidence adequately supported the drug quantity reflected in the presentence report. XV Supp.R. 6, lines 8–18. The trial judge's statements on this important matter appear in the following colloquy at the sentencing hearing:

> THE COURT: Well, having to do with 500 grams or more of cocaine. Objection number 3 was regarding paragraph 14 and the conclusion of the presentence report, the conspiracy involved more than 500 grams of cocaine. And in considering objection 1, it almost would be determinative of objection number 3.
>
> MR. HUGHES: I agree.
>
> THE COURT: And I have given serious thought to your rationale and the reason of your objections, not only in the sentencing today but in sentencing of others who were parties to this conspiracy. And the testimony that they were awaiting for a kilogram of crack cocaine, although it hadn't arrived, it was a—it was supposedly in transit, the conspiracy itself and the testimony that I think was provided during the trial clearly estab-

lished that there was more than 500 grams of cocaine—it was all crack cocaine—and warrants both the statement and the Court's finding that that is a fact, it's over 500 grams.

> As to Mr. Saunders being reliable and credible, frankly I found him reliable and credible.

XV Supp.R. 6, lines 1–20.

A sentencing court's computation of the quantity of drugs implicated by a crime is a factual finding that we review under the clearly erroneous standard. *E.g., United States v. Poole*, 929 F.2d 1476, 1483 (10th Cir.1991). In calculating the base offense level, the trial court may consider "the total quantity of drugs that were part of the same course of conduct or part of a common scheme or plan as the count of conviction." *Id.*

The defendant argues that the trial court erred by using as the basis for the 500–gram figure the speculative and inherently unreliable testimony of a government witness, Saunders. The defendant says that the basis of the trial court's drug quantity finding was this informant's testimony that at the time of their arrest, the conspirators were awaiting a shipment of approximately five kilograms of narcotics consisting of crack cocaine and "a little bit of heroin." XIV Supp.R. 109, lines 2–17. The defendant contends that the testimony about the expected drug transaction did not contain the necessary "indicia of reliability." *U.S.S.G.* § 6A1.3(a) (sentencing court may consider any relevant information that has "sufficient indicia of reliability to support its probable accuracy"); *see, e.g., United States v. Easterling*, 921 F.2d 1073, 1077 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991).

The government argues that the trial court did not base the 500–gram figure solely upon the testimony about the expect-

---

**2.** All cited guidelines are those that were in effect at the time of Coleman's sentencing. A district court normally applies the guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4); *e.g., United States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir.1991). Of course, the *Ex Post Facto* Clause prohibits the "retroac-

tive application of a changed guideline if the change disadvantages the defendant." *Id.* Our comparison of the guidelines indicates that the defendant was not disadvantaged here by the application of the guidelines in effect on the date of his sentencing.

ed drug shipment. The conclusions of the trial judge at the sentencing hearing are stated in general terms, quoted above. *See* XV Supp.R. 6, lines 1–20. We are satisfied that, in any event, trial evidence other than the testimony about the expected drug shipment adequately supports the trial court's conclusion that the conspiracy involved more than 500 grams of crack cocaine. Saunders, who testified about the expected drug shipment, also testified that he and Coleman had transported from California to Tulsa "about a half a kilo or 18 ounces each time" of crack cocaine and that they "probably made about four trips." XIV Supp.R. 94, lines 2–12. Any half-kilogram, or 500–gram, amount could have satisfied the weight requirement of the base offense level of 36. Other evidence concerning quantities of drugs included Saunders' testimony that on the night before the arrests, Coleman and another participant, Matthews, had arrived in Tulsa from California with "approximately three ounces of crack cocaine" (approximately 85 grams). XIV Supp.R. 103, lines 1–8. At the arrest scene, the police seized 48.68 grams, or about 1.8 or 1.9 ounces, of crack cocaine. XIII Supp.R. 72, lines 20–24, 73, lines 4–8.

■ The testimony about shipments of approximately half-kilogram amounts was evidence that the trial court properly could have considered in calculating the quantity of the drugs. In general, a trial court may use estimates based on information with a minimum indicia of reliability in calculating drug quantities for sentencing purposes. *E.g., Easterling*, 921 F.2d at 1077. The testimony about the half-kilogram shipments reasonably could be described as an estimate. Saunders testified that he and Coleman "probably made about four trips" and he approximated that he and Coleman had transported from California to Tulsa "*about* a half a kilo or 18 ounces each time." XIV Supp.R. 94, lines 2–12 (emphasis added). Though an estimate, the testimony about the shipments in general comprised the type of evidence of historical transactions that is not inherently unreliable. *See, e.g., Easterling*, 921 F.2d at

1077–78 (approving estimate based upon probation officer's interviews with two of defendant's former drug customers). *See generally U.S.S.G.* § 2D1.4 Application Notes n. 2 (estimates may be based, *inter alia*, upon information such as price, records, and similar transactions in controlled substances by defendant). Having had the opportunity to assess firsthand the witness' demeanor, the trial judge specifically found Saunders to have been "reliable and credible." XV Supp.R. 6, lines 19–20. In sum, the defendant has not convinced us that Saunders' testimony about the shipments of approximately 500 grams was too speculative or unreliable to support the trial judge's conclusions.

We uphold the sentence on this point without addressing the defendant's argument that the testimony about the expected drug shipment was inherently unreliable. Even if the testimony about the expected drug shipment was insufficient, the testimony about the other shipments demonstrates that the trial court's conclusion that the conspiracy involved more than 500 grams of crack cocaine was not clearly erroneous.

### III

■ The defendant argues further that because Coleman was acquitted of the firearms possession charge, the trial court erred in enhancing the sentence for firearms possession. We disagree.

The officers who made the arrests discovered two handguns behind a television stand. XIII Supp.R. at 57, lines 21–25, 58, lines 1–12. As a result, the trial court determined that firearms possession was a special offense characteristic that warranted increasing the offense level by two levels. XV Supp.R. 7, lines 22–25, 8, lines 1–10; *see U.S.S.G.* § 2D1.1(b)(1) & Application Notes n. 3. Though acknowledging that courts have upheld sentences enhanced for firearms possession despite the defendants' acquittal of firearms charges, the defendant here urges us to reach the opposite result. *Compare, e.g., United States v. Duncan*, 918 F.2d 647, 652 (6th Cir.1990) (allowing enhancement under

§ 2D1.1(b) despite defendant's acquittal of firearms carrying charge), *cert. denied,* —— U.S. ——, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991) *with United States v. Rodriguez,* 741 F.Supp. 12, 13–14 (D.D.C.1990) (ruling that to enhance sentence under § 2D1.1(b)(1) after defendant's acquittal of firearms charge would violate due process and double jeopardy principles).

In general in connection with offenses involving drugs, an enhancement of two levels is appropriate under the guidelines "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense" *U.S.S.G.* § 2D1.1(b)(1). The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offenses. *Id.* Application Notes n. 3. The government has argued that the enhancement was appropriate because the firearms were found at the arrest scene and because the testimony showed that the conspirators kept the weapons for protection.

We have concluded that the trial court did not err in enhancing Coleman's sentence for weapons possession despite his acquittal of the firearms charge. Here there was evidence that two weapons (Government Exhibits 8 and 9) had been located for several days at the arrest scene; that they were handled at will by those persons who lived at the apartment; and that they were kept for the protection of the conspiracy participants and the money and cocaine. *See* XIV Supp.R. 105, lines 12–25, 106, lines 1–25. That the jury did not convict the defendant of the § 924(c) charge is not a bar to consideration of this proof. We find persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted. *See, e.g., United States v. Mocciola,* 891 F.2d 13, 17 (1st Cir.1989) (deciding sentencing court may consider reliable facts underlying acquittal), *declined to follow by United States v. Brady,* 928 F.2d 844, 850–852 (9th Cir.1991) (refusing to enhance sentence on basis of intent to kill after defendant's acquittal of murder); *see also United States v. Johnson,* 911 F.2d

1394, 1401 (10th Cir.1990) (rejecting double jeopardy argument based upon use of evidence at sentencing on distribution charge where such evidence had been held lacking in specificity to support a conspiracy charge), *cert. denied,* —— U.S. ——, 111 S.Ct. 761, 112 L.Ed.2d 781 (1991).

## IV

The defendant argues that the trial court erred in considering as part of his criminal history his conviction for retaliating against a witness. The trial court added three points on the basis of Coleman's five-year sentence for the witness retaliation conviction. XV Supp.R. 10, lines 9–13; *see U.S.S.G.* § 4A1.1(a). The defendant says that the sentence imposed on the witness retaliation offense was not an appropriate basis for increasing his criminal history score because the conviction arose out of alleged retaliation against a witness testifying against the conspirators at the first trial and so was intimately related to the conspiracy, the conspirators, and their trial; the conduct was related in the sense of being part of a single common scheme or plan. Brief of Defendant–Appellant at 14–15; *see U.S.S.G.* § 4A1.2(a)(1), .2(a)(2) & Application Notes n. 1.

The guidelines allow a three-point enhancement for "each *prior sentence* of imprisonment exceeding one year and one month." *Id.* § 4A1.1(a) (emphasis added). The guidelines define a "prior sentence" as "any sentence previously imposed upon adjudication of guilt ... *for conduct not part of the instant offense." Id.* § 4A1.2(a)(1) (emphasis added). The defendant maintains that the conduct charged in the witness retaliation indictment was so "intimately related" to the conspiracy and possession offenses that it should not have been categorized as a prior sentence.

The defendant has not made a convincing argument that his conviction for retaliation against a witness was part of the drug-related offenses for purposes of the guidelines. The possession and conspiracy charges alleged criminal conduct that began and ended before the offense charged

**1430**

in the witness retaliation indictment; consequently, the offenses cannot be related under the theory that they occurred "on a single occasion." *Id.* § 4A1.2 Application Notes n. 3. At the close of Coleman's first trial on the drug charges, Coleman and Matthews allegedly assaulted Saunders while the jury was deliberating. Brief of Defendant–Appellant at 13. Thus, we feel that the two indictments clearly involved separate conduct. *See Banashefski,* 928 F.2d at 352–53 (ruling possession of stolen vehicle and possession of firearm by felon involved separate conduct under guidelines).

We do not feel that the offenses were related on the theory that they charged a "single common scheme or plan." *See U.S.S.G.* § 4A1.2 Application Notes n. 3. Nor were the offenses joined for trial or sentencing. *See id.* The trial court did not err as a matter of law in considering the sentence for the witness retaliation conviction as a "prior sentence."

## V

 In his last argument, the defendant contends that the trial court erroneously considered as criminal history a prior sentence for which the exact date of the sentencing was unknown. In general, the guidelines provide for a one-point increase for a sentence "imposed within five years of the defendant's commencement of the instant offense." *U.S.S.G.* § 4A1.2(d)(2)(B). The trial court added one point to Coleman's criminal history score for his conviction as a juvenile for "auto theft" in a California state court. *See* XI Supp.R. 5. The report listed the date of the arrest as "02–15–84" and listed the date the sentence was imposed as "Date Unknown." *Id.* The trial court reasoned that the sentence necessarily had been imposed after the arrest, which was less than five years prior to the date the government alleged the conspiracy began, December 1988. XV Supp.R. 9, lines 2–15. The defendant has argued that the trial court erred by adding a point to the criminal history score on the basis of speculation or

"unknown information." Reply Brief of Defendant–Appellant at 6.

Even though the sentencing date was unknown, the trial court did not err in considering the prior sentence in computing Coleman's criminal history. We believe the trial court had adequate information upon which it could reasonably infer that the sentence had been imposed within five years of the beginning of the conspiracy. The defendant's argument that the trial court erred because the arrest date might have been unrelated to the sentence imposed is unconvincing. The possibility of error in the dates in the adjudications listed in the presentence report is mere speculation, unsupported by any evidence presented.

AFFIRMED.