991 F.2d 806
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ben C. DOHERTY, III, Defendant-Appellee.
 Nos. 92-1334, 92-1345.
 United States Court of Appeals, Tenth Circuit.
 April 2, 1993.
 
 Before SEYMOUR, BARRETT and TACHA, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Senior Circuit Judge.
 
 
 1
 Ben C. Doherty, III appeals from the sentences imposed following his guilty pleas to two unrelated felonies.
 
 
 2
 On May 5, 1992, Doherty waived indictment in the District of Colorado, and the United States filed an information charging him with one count of conspiring, from February to June of 1987, to commit mail and securities fraud in violation of 18 U.S.C. § 371, a pre-Sentencing Guidelines charge. Three days later, on May 8, 1992, Doherty waived indictment in the Northern District of Texas, and the United States filed an information charging him with mail fraud based on fraudulent insurance coverage from 1988 to July 31, 1989, in violation of 18 U.S.C. § 1341, a Guidelines charge. Thereafter, the Texas charge was transferred pursuant to Fed.R.Crim.P. 30, 18 U.S.C., to the District of Colorado for disposition.
 
 
 3
 On June 16, 1992, following written plea agreements, Doherty plead guilty to both charges. At the plea hearing, there was no dispute relative to the parties' agreement that the United States would: recommend a sentence of not more than thirty-six months for the § 371 conspiracy charge; advise the court of Doherty's cooperation; and recommend probation for the § 1341 mail fraud charge, to run consecutive to the § 371 charge. Based on the parties' agreement, Doherty faced a possible thirty-six months imprisonment followed by a consecutive period of probation or supervised release.
 
 
 4
 During the plea hearing, the government, upon inquiry by the court, advised the court that the maximum amount of restitution for the § 371 conspiracy charge was $262,063.68. (Appellee's Appendix, Tab C, at 12). The government also advised the court that the maximum amount of restitution for the § 1341 mail fraud charge was $31,950.04. Id. Simultaneous therewith, counsel for Doherty advised the court that "by signing these plea agreement documents, we are not stipulating to these restitution numbers.... [W]e [reserve] the ability to show the Court what we think the fair amount ought to be." Id. at 13.
 
 
 5
 During the sentencing hearing, the court noted: Doherty was at Offense Level 10 and Criminal History Category II with an imprisonment range of eight to fourteen months; the seriousness of the § 1341 mail fraud offense; the existence of the § 371 conspiracy offense. The district court then sentenced Doherty to twelve months imprisonment and three years supervised release on the § 1341 mail fraud charge. With respect to the § 371 conspiracy charge, under which Doherty could have been sentenced to a maximum of five years imprisonment, the court sentenced Doherty to six months imprisonment to be served consecutively to his twelve months imprisonment on the mail fraud charge. Accordingly, Doherty was sentenced to a total of eighteen months imprisonment and three years supervised release.
 
 
 6
 The district court ordered that Doherty pay restitution of $3,349.49 on the § 1341 mail fraud charge, and $163,126.41 on the § 371 conspiracy charge to be paid jointly and severally by Doherty and his co-defendants. The latter amount was to be paid following payment of the restitution for the mail fraud charge and was subject to being reduced. ("If the amount of restitution is reduced for another defendant, it will be reduced for all defendants."). (R., Vol. 2, Sentencing Hearing, p. 14).
 
 
 7
 On appeal, Doherty contends that the district court abused its discretion in ordering consecutive sentences, in failing to consider the factors in 18 U.S.C. § 3553, in rejecting and failing to comment on his request for a downward departure, and in the amount of restitution ordered.
 
 I.
 
 8
 Doherty originally contended that the district court abused its discretion in ordering consecutive sentences. He has withdrawn this allegation of error.
 
 II.
 
 9
 Doherty contends that the district court abused its discretion by failing to consider the factors in 18 U.S.C. § 3553, by failing to state its reasons for the imposition of the sentence, and by improperly applying the Guidelines.
 
 
 10
 Doherty argues that during the sentencing hearing he requested a sentence that would result in ten months "hard time" and four months in a halfway house. Doherty argues that the district court abused its discretion when it did not impose such a sentence and did not consider his "need for 'correctional treatment in the most effective manner' as required by 18 U.S.C. § 3553(a)(2)(D)." (Brief of Appellant at p. 4). Doherty also argues that the court abused its discretion when it failed to state reasons for imposing its sentence as required by § 3553(c). Last, Doherty argues that the court abused its discretion when it failed to consider the fact that he had cooperated with the government.
 
 
 11
 The government responds that there is no evidence that the court failed to consider the various factors in § 3553. The government argues that, in sentencing Doherty, the district court adopted the presentence report, considered the seriousness of the offenses, the applicable sentencing range, and the need for restitution. The government further argues that because there is no requirement that a sentencing court make its findings in a particular manner, the court properly indicated the correct Guidelines range and how the sentence was chosen. The government also observes that the court was apprised of Doherty's cooperation in the plea agreement, (Appellee's Appendix, Tab B, at 2), and during the plea hearing. Id., Tab C, at 10-11.
 
 
 12
 Here, the court did not depart from the Guidelines without specifying its reasons for doing so. United States v. White, 893 F.2d 276, 278 (10th Cir.1990). The twelve-month sentence imposed on the § 1341 mail fraud charge fell in the middle of the eight to fourteen month sentencing range. As such, our review is limited: "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the Guidelines." 18 U.S.C. § 3742(e); United States v. Beaulieu, 900 F.2d 1531, 1535 (10th Cir.), cert. denied, 497 U.S. 1009 (1990).
 
 
 13
 Under § 3553(a), the court is required to consider, inter alia, the nature and seriousness of the offense, the history and character of the defendant, and the sentencing range available under the Guidelines. Under § 3553(c), the court is required to "state in open court the reasons for its imposition of the particular sentence." The court need only make a generalized statement of its reasoning "so that appellate review does not flounder in the 'zone of speculation.' " United States v. Slater, 971 F.2d 626, 633 (10th Cir.1992) (quoting United States v. Underwood, 938 F.2d 1086, 1091-92 (10th Cir.1991). "[W]e do not need a highly detailed statement." Id. (quoting Underwood, 938 F.2d at 1092).
 
 
 14
 Here, the district court sentenced Doherty to twelve months imprisonment and three years supervised release, after noting the seriousness of the § 1341 mail fraud offense and the existence of a second offense, the § 371 conspiracy. The sentence was within the Guidelines range and was made following a detailed sentencing hearing. It comported with § 3553(a) and (c). Under these circumstances, we hold that the district court did not abuse its discretion in sentencing Doherty.
 
 III.
 
 15
 Doherty contends that the district court abused its discretion in rejecting and failing to comment on his request for a downward departure. Doherty submits that his request to serve four months of his sentence in a halfway house was a request for a downward departure and that the court was accordingly required to comment on its authority to depart and its choice relative thereto. The government responds that Doherty did not ask the district court for a downward departure and that this issue is raised for the first time on appeal.
 
 
 16
 Assuming, arguendo, that Doherty's request to serve four months of his sentence in a halfway house was a viable request for a downward departure, Doherty's claim must nevertheless fail since a district court's refusal to depart downward from the Guidelines is not appealable when, as here, the sentence is within the guideline range. United States v. Florentino, 922 F.2d 1443, 1448 (10th Cir.1990). See also: United States v. Gines, 964 F.2d 972, 976 (10th Cir.1992), cert. denied, --- U.S. ---- (1993) (court of appeals does not have jurisdiction to review the district court's discretionary decision to not depart downward).
 
 IV.
 
 17
 Doherty contends that the district court erred in the amount of restitution ordered.
 
 
 18
 As set forth supra, Doherty's counsel apprised the court during the plea hearing that "by signing these plea agreement documents ... we are not stipulating to the these restitution numbers." (Appellee's Appendix, Tab C, at 13). Thereafter, Doherty's defense counsel acknowledged during the sentencing hearing that Doherty should pay the total $3,349.49 in restitution owing on the § 1341 mail fraud charge. (R., Vol. 2, p. 5). Subsequent thereto, the following colloquy occurred between the court and defense counsel relative to the amount of restitution owing on the § 371 conspiracy charge:
 
 
 19
 THE COURT: What happened is I indicated that I thought the 163,126.42 was the correct amount of restitution; and the attorney for that defendant asked for a hearing on restitution. So if, indeed, it is shown at the hearing that it is something less than that, it will be reduced....
 
 
 20
 DEFENSE COUNSEL: I think that is the appropriate procedure in this case as well. After all the defendants have been sentenced in this matter--and I presume the same figure will be jointly and severally assessed against all--
 
 
 21
 THE COURT: It would be, and it would be a joint and several figure.
 
 
 22
 DEFENSE COUNSEL: Then all of the defense lawyers can get together and see if there is a valid argument why it would be less; but I would think that one hearing involving all defense counsel would be appropriate, rather than serial hearings. And then I will only join in that hearing if there appears to be an argument that the number is incorrect.
 
 
 23
 (R., Vol. 2, p. 6) (emphasis supplied).
 
 
 24
 During the sentencing hearing, Doherty's counsel did not challenge Doherty's ability to pay any court-ordered restitution. Instead, he acknowledged that Doherty should be ordered to pay the total $3,349.49 on the § 1341 mail fraud charge. Further, defense counsel stated that he would "only join in that hearing [on restitution] if there appears to be an argument that the number is incorrect." During the hearing on restitution, however, defense counsel nevertheless challenged for the first time Doherty's ability to pay restitution on the § 371 charge:
 
 
 25
 DEFENSE COUNSEL: However, in focusing again on Section 3664, Mr. Doherty has some $150,000 in back child support and an additional child in college, which he is still responsible for, to support and to pay the educational expenses. It would seem, your Honor, that to then order Mr. Doherty to pay $163,123.42 after he gets out of one and a half years in a federal prison within the five year requirement after he finishes his hard time would require him to pay a little over $3,000 a month. He already has to pay about $3,500 in--
 
 
 26
 THE COURT: You're forgetting one thing. This is to the joint and several among the three individuals. It isn't that each one is going to pay the 163. They're all three.
 
 
 27
 DEFENSE COUNSEL: That's correct.
 
 
 28
 THE COURT: Assuming they all contribute to it, we're really talking about $50-some-thousand.
 
 
 29
 DEFENSE COUNSEL: But I'm looking out for my client, your Honor. There is also the possibility that Mr. Doherty would bounce back and do best and the others not do so well; and he'd be responsible potentially for the entire amount.
 
 
 30
 THE COURT: [Defense counsel], were you here at the sentencing hearing?
 
 
 31
 DEFENSE COUNSEL: I was in attendance, your Honor.
 
 
 32
 THE COURT: Because I did address the ability of Mr. Doherty to earn good money. He is a good salesman, and that was addressed at the time of the sentencing.
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 The argument made by Mr. Doherty's attorney ... is that Mr. Doherty ... [does] not have the ability to make these payments. I think the inference may as well be gained that each of these will--and there will be three parties ... each of these will be contributing towards the restitution and none is going to pay the whole amount. All three ... are, it still appears to this court, capable of earning good money after they have served their short sentence.
 
 
 36
 This is a serious offense. It is an offense which requires that the sentence involve considerations of deterrence to others. One element of deterring others is to say if you cause loss, you're going to pay for it.
 
 
 37
 If, indeed, at some later time under the supervised release it is shown to the Court that these individuals--or either of these individuals are not able to pay and do not have the capacity, as I think they do now--to pay restitution and significant restitution, then that can be shown to me later. I can always reduce it at a later time. But right now, the Court is convinced that the proper amount is as I ordered, the 163,126 and that it should be joint and several.
 
 
 38
 (Appellee's Appendix, Tab F, pp. 9-10, 37-38).
 
 
 39
 On appeal, Doherty argues that the court failed to comply with 18 U.S.C. § 3664(a) under which the court is to consider the financial needs and earning ability of the defendant and the defendant's dependents, as well as the victim's losses and other factors. Doherty argues that he stood before the court as an indigent with $150,000.00 in child support arrearages plus a child in college and that the restitution order will render him destitute.
 
 
 40
 "While we review de novo the legality of a sentence of restitution, the district court's findings of fact will not be disturbed unless clearly erroneous." United States v. Herndon, 982 F.2d 1411, 1420 (citing, United States v. Teehee, 893 F.2d 271, 274 (10th Cir.1990)). "Moreover, the amount of restitution is reviewed for abuse of discretion." Id. (citing, United States v. Rogat, 924 F.2d 983, 985 (10th Cir.), cert. denied, --- U.S. ---- (1991)). A defendant's present indigency does not bar a restitution order where the evidence indicates that he or she has some assets or earning power and thus possibly may be able to pay the amount ordered. United States v. McIlvain, 967 F.2d 1479, 1481 (10th Cir.1992); United States v. Grimes, 967 F.2d 1468, 1473 (10th Cir.1992).
 
 
 41
 Applying these principles to our case, we hold that the court's findings that Doherty has the capability to make money and that he is a good salesman, (R., Vol. 2, at p. 14), were not clearly erroneous and that the restitution ordered did not give rise to an abuse of discretion. The presentence report clearly established Doherty's earning power, including: Doherty's ownership of an insurance agency between 1980 and 1986 during which he earned $48,000 per year; Doherty's work as an insurance broker in 1987 and 1988 during which he earned $15,000 per year; Doherty's operation of an insurance agency which reported a small profit in 1988 and 1989; Doherty's employment as a financial consultant from 1990 to 1992 during which he earned $5,000 per month; and Doherty's employment at the time of sentencing as a financial consultant at a golf academy where he was making approximately $4,000 per month.
 
 
 42
 Doherty has never challenged that he should pay the total $3,349.49 restitution award for the § 1341 mail fraud charge. Moreover, during the hearing on restitution, Doherty's counsel candidly acknowledged the possibility that Doherty could "bounce back ... and ... be responsible potentially for the entire amount [of the $163,123.42 restitution award for the § 371 conspiracy charge]." (Appellee's Appendix, Tab F, at 10). Finally, the district court stated during the hearing on restitution that the $163,123.42 award could be reduced at a later date upon a showing that "either of these individuals are not able to pay and do not have the capacity, as I think they do now--to pay restitution and significant restitution." (Appellee's Appendix, Tab F, p. 38).
 
 
 43
 AFFIRMED.
 
 
 
 *
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3