**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joan GERBER, Defendant–Appellant.**

No. 93–5057.

United States Court of Appeals,
Tenth Circuit.

May 9, 1994.

94

Jill M. Wichlens, Asst. Public Defender, and Michael G. Katz, Federal Public Defender, Denver, CO, for defendant-appellant.

Allen J. Litchfield, Asst. U.S. Atty., and Stephen C. Lewis, U.S. Atty., Tulsa, OK, for plaintiff-appellee.

Before TACHA, BRORBY, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

The principal question in this direct criminal appeal is whether, for Ex Post Facto Clause purposes, the government must apply the version of United States Sentencing Guideline § 5K1.1 that was in effect when a defendant attempted to provide substantial assistance to the authorities or the version that was in effect when the defendant committed the underlying criminal offense. We hold that the critical date in our retroactivity analysis under § 5K1.1 is when the cooperation was provided, rather than when the crime occurred. Accordingly, we affirm.[1]

## I.

The Defendant–Appellant, Joan Gerber ("Gerber"), pled guilty to interstate transportation in aid of racketeering enterprises, in violation of 18 U.S.C. § 1952, and money laundering, in violation of 18 U.S.C. § 1956. During the sentencing hearing, the government informed the court about Gerber's extensive efforts to assist in the prosecution of other suspects. Indeed, the government explained that Gerber attended "numerous debriefings with [federal] agents, and hours, in fact days, of debriefings...." The government described Gerber as "open and candid with the information that she did possess" and as having made a "fairly strong effort" to assist. Gerber's diligent efforts notwithstanding, the government declined to file a motion pursuant to United States Sentencing Guideline ("U.S.S.G.") § 5K1.1 for a two-point reduction in Gerber's base offense level for substantial assistance to authorities. The government concluded that Gerber's "information did not rise to the level of a substantial assistance motion" because the information "was not sufficient for us to move on in any way, shape or form."

The offenses to which Gerber pled guilty occurred in March and April 1989. At that time, § 5K1.1 provided that "[u]pon a motion of the government stating that the defendant has made *a good faith effort to provide substantial assistance* ..., the court may depart

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. Therefore, the case is ordered submitted without oral argument.

from the guidelines." U.S.S.G. § 5K1.1 (1988) (emphasis added). On November 1, 1989, well before the court conducted Gerber's sentencing hearing, the Commission's amendment to § 5K1.1 took effect. In place of the "good faith effort" language, the amended version provided that "[u]pon motion of the government stating that the defendant *has provided* substantial assistance ..., the court may depart from the guidelines." U.S.S.G. § 5K1.1 (1989) (emphasis added). The government concedes that its decision not to file a downward departure motion for substantial assistance arose from its application of the amended version of § 5K1.1. Appee. Br. at 10. Gerber's cooperation did not merit a substantial assistance motion, the government reasoned, because the test under the November 1989 amendment to § 5K1.1 is whether Gerber actually provided substantial assistance, not whether she engaged in a good faith effort to provide such assistance.

In this appeal, Gerber alleges that the government's application of the amended version of § 5K1.1 violated the Ex Post Facto Clause of Article I of the United States Constitution.[2] The government responds that the Ex Post Facto Clause was not implicated because the amendment to § 5K1.1 merely clarified the existing provision and in no way altered the government's discretion to file a downward departure motion for substantial assistance.[3]

## II.

■ Although § 5K1.1 "gives the government a power, not a duty, to file a [downward departure] motion" for substantial assistance, we exercise jurisdiction to review alleged constitutional infirmities arising from the prosecutor's discretionary refusal to file a § 5K1.1 motion. *Wade v. United States,* — U.S. —, —, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992); *United States v. Lee,* 989 F.2d 377, 379–80 (10th Cir.1993) (enumerating limited grounds upon which a dis-

trict court has authority to review the prosecutorial discretion to file a § 5K1.1 motion).

■ Gerber neither objected to the presentence report nor requested the district court to conduct an evidentiary hearing to determine whether she was entitled to a downward departure for substantial assistance. We therefore must apply the plain error standard of review. *United States v. Saucedo,* 950 F.2d 1508, 1511 (10th Cir.1991); Fed.R.Crim.P. 52(b). To constitute plain error, the error must have been both "obvious and substantial." *United States v. Brown,* 996 F.2d 1049, 1053 (10th Cir.1993) (quoting *United States v. Mitcheltree,* 940 F.2d 1329, 1333–34 (10th Cir.1991)). "An error is substantial if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.*

■ The Supreme Court admonishes that the "plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)). However, because we confront a potential constitutional error in this appeal, we will apply the plain error rule less rigidly. *United States v. Jefferson,* 925 F.2d 1242, 1254 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991).

## III.

■ A sentencing court is generally required to apply the Guidelines that are in effect on the date the defendant is sentenced. *United States v. Brunson,* 907 F.2d 117, 120 (10th Cir.1990); 18 U.S.C. § 3553(a)(4). The Ex Post Facto Clause, however, bars the sentencing court from retroactively applying an amended guideline provision when that amendment "disadvantages the defendant." *Saucedo,* 950 F.2d at 1513 (quoting *United*

---

**2.** "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3.

**3.** There is no dispute in this case that the district court lacks the authority to grant a downward departure under § 5K1.1 absent a motion for such a departure from the government.

*States v. Underwood,* 938 F.2d 1086, 1090 (10th Cir.1991)).[4]

■ "An ex post facto law is one that among other things (1) makes conduct criminal that was legal when done, or (2) inflicts greater punishment for an offense than the law existing when the offense was committed." *United States v. Patzer,* 15 F.3d 934, 942–43 (10th Cir.1993) (quoting *McDonald v. Champion,* 962 F.2d 1455, 1457 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 256, 121 L.Ed.2d 187 (1992)). To determine whether the application of a sentencing guidelines provision violates the Ex Post Facto Clause, the Supreme Court has articulated a two-prong test: first, did the sentencing court apply the guideline to "events occurring before its enactment," and second, did that guideline "disadvantage the offender affected by it." *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)).

Consistent with this analytical framework, we held in *Underwood* that the Ex Post Facto Clause prevented the court from applying the amended version of § 2D1.1(b)(1)—which imposes a two-point upward adjustment for the possession of a firearm during the commission of a drug offense—that did not take effect until after the defendant committed the offense. *Underwood,* 938 F.2d at 1090 (Because the November 1989 amendment to § 2D1.1(b)(1) removed the scienter requirement regarding possession of a firearm, "we have little trouble concluding that retroactive application of the changed guideline would disadvantage the defendant in this case."). *See also United States v. Smith,* 930 F.2d 1450, 1452 n. 3 (10th Cir.) (applying the guideline version in effect on the date of the offense, rather than the amended version in effect at sentencing, because the amendment increased the offense level applicable to the charged offense),

*cert. denied,* —— U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991).

■ We have identified two principles underlying the Ex Post Facto Clause: "to restrain legislatures and courts from arbitrary and vindictive action and to prevent prosecution and punishment without fair warning." *Devine v. New Mexico Dep't of Corrections,* 866 F.2d 339, 344 (10th Cir.1989) (quoting *Rubino v. Lynaugh,* 845 F.2d 1266, 1272 (5th Cir.1988)). *See also Weaver,* 450 U.S. at 30, 101 S.Ct. at 965 ("Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.").

■ As noted, the government in the instant case concedes that it relied on the November 1989 amended version of § 5K1.1 in opting not to file a motion on behalf of Gerber for substantial assistance. The November 1989 amendment to § 5K1.1, in effect when Gerber was sentenced, markedly narrowed a defendant's eligibility for such a motion by replacing the "good faith" standard with the "has provided substantial assistance" standard. U.S.S.G. § 5K1.1 (1989).

Nevertheless, the government contends that its application of the November 1989 version of § 5K1.1 did not implicate the Ex Post Facto Clause because the amendment constituted a clarification rather than a substantive change. *See Saucedo,* 950 F.2d at 1514 (the Ex Post Facto Clause does not bar the retroactive application of a mere clarification to the Guidelines). To this end, the government points to the Commission's description of the November 1989 amendment as "clarify[ing]" its intent regarding departure under § 5K1.1. U.S.S.G. Appendix C, amendment 290.

---

4. We recognized in *Saucedo* that the Ex Post Facto Clause places a "limitation on the powers of the Legislature." *Saucedo,* 950 F.2d at 1515 n. 12 (quoting *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977)). In light of the Supreme Court's recognition of the Sentencing Commission as an "independent agency in every relevant sense," *Mis-* *tretta v. United States,* 488 U.S. 361, 393, 109 S.Ct. 647, 665, 102 L.Ed.2d 714 (1989), we joined other circuits in concluding that the Ex Post Facto Clause bars the retroactive application of a changed sentencing guideline, if the change disadvantages the defendant. *Saucedo,* 950 F.2d at 1515 n. 12.

 However, we read the textual change to § 5K1.1 as a substantive amendment. It makes a substantive change in the standard that must be met before a defendant can become eligible for a downward departure for substantial assistance. Thus, we are not bound by the Commission's characterization of the purpose behind its amendment. *United States v. Mondaine,* 956 F.2d 939, 942 (10th Cir.1992).

 We conclude that a defendant is entitled to have the government exercise its discretion under the version of § 5K1.1 in effect at the time the defendant provides the assistance. Section 5K1.1 speaks to the assistance a defendant provides to the government, rather than the criminal conduct for which the defendant was convicted. Thus, the retroactivity analysis turns on which version of § 5K1.1 was in effect when she participated in the numerous briefings with federal agents—not when she committed the unlawful conduct to which she pled guilty. *Cf. Miller,* 482 U.S. at 430, 107 S.Ct. at 2451 (defining retrospective as the application *"to events"* occurring before the enactment of the amended provision) (emphasis added). Unlike in *Underwood* and *Smith,* where the Guideline amendments altered the potential sentence for the underlying criminal conduct, § 5K1.1 concerns a defendant's cooperation with the government after apprehension. Therefore, because the key point in time for our retroactivity analysis is when Gerber cooperated with the government, her ex post facto challenge to the government's application of § 5K1.1 rests on whether she attempted to assist the authorities when the original or the November 1989 amended version of § 5K1.1 was in effect.

Unfortunately, the record is silent on precisely when Gerber attempted to assist the government. What evidence does exist, however, suggests that Gerber did not provide assistance to the government until after the November 1989 amendment to § 5K1.1 took effect. The unlawful conduct to which she pled guilty occurred in March and April 1989, but the government did not obtain an indictment until July 10, 1992. Moreover, Gerber reveals that, as part of the guilty plea entered on October 8, 1992, she agreed to cooperate with the federal agents in exchange for the government's consideration of a § 5K1.1 motion for substantial assistance. In any event, because the record does not plainly show that Gerber provided assistance to the government before the November 1989 amendment to § 5K1.1, and because she did not previously raise as error the application of the November 1989 amendment to § 5K1.1, we cannot find plain error.[5]

## IV.

Accordingly, we AFFIRM Gerber's sentence.

---

**5.** Because we conclude that Gerber has not satisfied the first prong of *Miller,* we need not reach the second prong, namely, whether the November 1989 amendment to § 5K1.1 disadvantaged Gerber by replacing the good-faith standard with the requirement that the defendant actually provide substantial assistance. *Miller,* 482 U.S. at 430, 107 S.Ct. at 2451.