**UNITED STATES of America, Plaintiff,**

v.

**Kieran George KENNEDY, Defendant.**

**Cr. No. 94–534 JP.**

United States District Court,
D. New Mexico.

Oct. 31, 1996.

Adam G. Kurtz, Peter Schoenburg, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, Albuquerque, NM, for defendant.

Ned Gines, Sandy, UT, pro se.

Allison Siau, Tucson, AZ, pro se.

Robert D. Kimball, U.S. Attorney's Office, District of New Mexico, Albuquerque, NM, for U.S.

***MEMORANDUM OPINION AND ORDER***

PARKER, District Judge.

The subject of this memorandum opinion and order is defendant's motion to reconsider (Doc. # 73) filed May 19, 1995. Defendant seeks reconsideration of the memorandum opinion and order (Doc. # 72) filed May 12, 1995 in which I denied defendant's motion to suppress physical evidence. Defendant argued in his motion to suppress (Doc. # 31) that the narcotics-detecting canine, Bobo, who positively alerted to defendant's luggage, was unreliable, and therefore, unable to provide the necessary probable cause to support issuance of a search warrant. DEA Special Agent Kevin Small had prepared an affidavit for search warrant based almost

---

(1) For any damages for which the United States government might be liable for the

insured's use of the vehicle; ...."

exclusively on Bobo's positive alert to defendant's luggage. Defendant asserted that Bobo's handler, Detective Rob Lujan, had failed to properly document Bobo's field searches, thereby making it impossible to accurately determine how many times Bobo had alerted when no seizable amounts of contraband were found. Consequently, defendant argued, the lack of daily records precluded the government from demonstrating that Bobo was sufficiently reliable to independently support an affidavit for search warrant and justify a neutral magistrate's finding of probable cause. In an attempt to recreate Bobo's field searches, the government and defendant expended considerable time and effort locating documents related to Bobo's prior searches; e.g., search warrants, DEA investigative reports, etc. These efforts produced documents and reports establishing that in 40 out of the 56 times that Bobo alerted, seizable amounts of contraband were discovered. Based on Bobo's extensive, albeit not complete, re-created history, I determined, with reservations about Detective Lujan's failure to follow instructions about proper procedures, that Bobo was a sufficiently reliable narcotics-detecting canine to support a finding of probable cause. I also found that Agent Small did not knowingly or intentionally, or with reckless disregard for the truth, include false information in his affidavit for search warrant. *See Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendant now requests that I reconsider my previous denial of his motion to suppress physical evidence.

### DISCUSSION

Defendant asserts that the memorandum opinion and order denying his motion to suppress contained an incomplete *Franks* analysis regarding whether Agent Small's affidavit for search warrant was deficient. The memorandum opinion and order stated that

> [t]here is a presumption of validity regarding the affidavit in support of a search warrant. *Franks*, at 171, 98 S.Ct. at 2684. In order to void a search warrant, a defendant must show by a preponderance of the evidence that the affiant included a "false statement knowingly and intentionally, or

with reckless disregard for the truth." A defendant must also prove that if the false material is stricken, the affidavit's remaining content is insufficient to establish probable cause. *Id.* at 155–56 [98 S.Ct. at 2676–77]. "Suppression ... remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Leon,* 468 U.S. 897, 923 [104 S.Ct. 3405, 3421, 82 L.Ed.2d 677] (1984). Several courts have agreed that the "deliberate falsehood" and the "reckless disregard" standards set out in *Franks* apply to material omissions as well. *See, e.g., Stewart v. Donges,* 915 F.2d 572, 582 (10th Cir.1990).

Defendant does not contend that a *Franks v. Delaware* analysis was incorrect, but rather asserts that the standard used was incomplete because it considered only Agent Small's knowledge and failed to consider information known to Detective Lujan regarding Bobo's training,[1] field searches, and records which Detective Lujan had not imparted to Agent Small. Defendant argues that what Detective Lujan knew was critical on the question of Bobo's reliability and should not have been omitted from Agent Small's affidavit. In the affidavit for search warrant, Agent Small testified that "Bobo is a certified narcotics canine with the Albuquerque Police Department and is trained to alert to the odors associated with Marijuana, Heroin, Cocaine, and/or Methamphetamine." Agent Small also stated that Bobo had alerted to defendant's "large American Tourister hardsided suitcase." Based on Bobo's positive alert Agent Small approached defendant's roomette and proceeded to ask defendant questions related to his travel plans and destination. In response to Agent Small's questions, defendant stated that he was "dropping a bag" for an individual named Will. Agent Small concluded that based on Bobo's alert to defendant's luggage, and defendant's statements regarding Will, probable cause existed to seize defendant's luggage and to obtain a search warrant.

---

1. Bobo was trained and certified by Global Training Academy in San Antonio, Texas.

After thoroughly reviewing Agent Small's testimony and Bobo's records, I determined that Agent Small did not knowingly or recklessly include false information in his affidavit for search warrant. Specifically, I found that: (1) Agent Small was unaware that Detective Lujan had not followed proper recordkeeping protocol; (2) Agent Small was unaware that Bobo had alerted on more than two occasions when no seizable amounts of contraband were found;[2] and (3) Agent Small had no reason to suspect Bobo's reliability, especially since he previously had relied on Bobo's alerts to support 10–15 search warrants and was aware of only two occasions when no seizable quantity of contraband was found. Based on these findings, I concluded that Judge Lorenzo Garcia, the magistrate who issued the search warrant, was justified in finding probable cause to issue a search warrant based on Agent Small's affidavit.

■ Defendant correctly argues that the *Franks* analysis in the May 12, 1995 memorandum opinion and order was incomplete because it did not take into consideration Detective Lujan's knowledge of Bobo's training, field searches, and records, which was not mentioned in the affidavit.

> "If we held that the conduct of ... the affiant[ ] was the only relevant conduct for the purpose of applying the teachings of *Franks,* we would place the privacy rights protected by that case in serious jeopardy. As the Supreme Court noted in *Franks,* 'police [can]not insulate one officer's deliberate misstatements merely by relaying it through an officer-affiant personally ignorant of its falsity.' 438 U.S. at 164 n. 6, 98 S.Ct. at 2680."

*United States v. DeLeon,* 979 F.2d 761, 764 (9th Cir.1992) (*quoting United States v. Calisto,* 838 F.2d 711, 714 (3d Cir.1988)); *see also United States v. Pritchard,* 745 F.2d 1112, 1118 (7th Cir.1984). Here, Bobo's reliability at the time he alerted to defendant's luggage is central to a finding of probable cause. Under *DeLeon,* the affiant Agent Small must be charged with, at least, the

knowledge of Detective Lujan, Bobo's handler, relating to Bobo's reliability.

To successfully challenge an allegedly deficient affidavit for search warrant, defendant must show that the investigating officers "omitted the information with the intent to make, or in reckless disregard of whether they made, the affidavit misleading." *United States v. Jacobs,* 986 F.2d 1231, 1234 (8th Cir.1993). The omitted material must be clearly critical to the finding of probable cause. *Jacobs,* 986 F.2d at 1235. Similarly, "[r]ecklessness may be inferred from omission of facts which are 'clearly critical' to a finding of probable cause." *Bruning v. Pixler,* 949 F.2d 352, 356 (10th Cir.1991) *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); *DeLoach v. Bevers,* 922 F.2d 618, 622 (10th Cir.1990) (citations omitted), *cert. denied,* 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991). If it is established that the critical information was recklessly omitted from the affidavit, then defendant must show that the affidavit, if supplemented with the omitted information, would not be sufficient to support a finding of probable cause. *Jacobs,* 986 F.2d at 1235.

In this case, Agent Small's affidavit stated that Bobo was a certified narcotics canine and that Bobo had alerted to defendant's luggage. The affidavit, however, did not include any information about Bobo's training, accuracy rate, and post-certification reliability. The issue of Bobo's reliability has been the focus of extensive hearings because Detective Lujan failed to properly maintain daily records documenting Bobo's field searches. Detective Lujan has been unable to give accurate information related to the number of searches Bobo conducted, how many searches uncovered seizable quantities of contraband, or the nature of the contraband seized. As a result, it has been impossible to determine Bobo's overall success rate or, more critically, his failure rate. Detective Lujan's contention that he relied on other law enforcement agencies to document Bobo's activities lacks merit because Detective Lujan, the only person trained to work

---

**2.** Detective Lujan never discussed with Agent Small the fact that Bobo had alerted as many as 16 times in the past when no seizable quantity of

contraband was found. Motion Hearing, January 18, 1995, p. 85.

with Bobo, never requested a copy of search warrants or incident reports, and did not follow through to determine if Bobo's alerts in those instances resulted in the seizure of contraband.

The problems associated with Detective Lujan's record-keeping are set forth fully in the May 12, 1995 memorandum opinion and order.

[I]t is impossible to determine what Bobo's overall accuracy rate is because of the inadequate and incomplete records kept by his handler, Detective Lujan. Mr. Gelsinger's testimony illustrates gaps in Bobo's history and demonstrates the imperfections in Detective Lujan's records. Moreover, the records that are available do not supply any information with respect to why Bobo may have alerted on certain occasions when no drugs were seized.

When the training and performance records fall short of establishing the reliability of a narcotics-detecting canine, the testimony of the canine's handler may be found to be sufficient to demonstrate the dog's reliability in order to support a valid sniff. *See United States v. Diaz,* 25 F.3d 392, 396 (6th Cir.1994). Unfortunately, Detective Lujan's testimony does little to enhance Bobo's reliability. During motion hearings addressing this subject,[3] Detective Lujan's testimony was frequently inconsistent and he failed to clarify many of the questions that his spotty records had raised.

For example, in response to being asked how many times Bobo had been called upon to check for the odor of controlled substances in vehicles, suitcases, or rooms, Detective Lujan first testified that Bobo's actual field searches totaled well over 20 to 30 times. Transcript of Motion Hearing held September 15, 1994 at pp. 25–26. A few minutes later, Detective Lujan asserted that Bobo had alerted probably 50 to 60 times when seizable quantities of controlled substances were found. *Id.* at 42. On re-direct, Detective Lujan recalled that Bobo had alerted "over 60 times" when a controlled substance was found. *Id.* at 95.

In addition, at the hearing on September 15, 1994, Detective Lujan first maintained that he could only remember "right around three times" when Bobo had alerted and no drugs were seized. *Id.* at 42. Several minutes later on cross-examination, Detective Lujan's memory cleared slightly and he recalled a total of six times when no seizable amounts of drugs were found after Bobo had alerted. On re-direct, he remembered five times when Bobo had alerted and no seizable items were found. *Id.* at 94. The passage of time seems to have improved Detective Lujan's memory. Four months later, during cross-examination on January 11, 1995, Detective Lujan was able to recall the 13 occasions listed on page 10, *supra,* when Bobo had alerted but no seizable amounts of drugs were found. Detective Lujan also testified that he had started to write down as of April 19, 1994 "everything the dog has done, whether it's good alerts or bad alerts, as you call it." *Id.* at 65. However, at the motion hearing on January 11, 1995, Detective Lujan indicated that the starting date of April 19, 1994 was incorrect and that he had begun keeping complete records on Bobo's field searches only since October 1994. Transcript of Motion Hearing, January 11, 1995 at p. 85.

Detective Lujan's shoddy recordkeeping and unconvincing testimony is relevant when viewed in light of the special continuous training necessary to help Bobo maintain his ability to detect controlled substances. Defendant's expert, Dr. Dan Craig, testified about conditioning techniques used to train dogs to alert to specific odors. Basically, a dog is trained to alert to narcotics through a hierarchy of reinforcement. Specifically, the trainer gradually eliminates associative odors so that the dog finally alerts only to the target odor. The dog's behavior is reinforced through a reward system: for example, a ball may be given to the dog after a positive alert. The ultimate goal is to eliminate the non-target cues through extinction training. Although this system of training has recognized reliability, it is not

---

**3.** Detective Lujan not only testified in this case but also in *United States v. Cummings,* Cr. No. 94–221 JP, a substantially similar case where the defendant attacked Bobo's reliability.

without inherent problems. Foremost is that the dog can spontaneously revert to his prior behavior. It is not uncommon for a dog to be distracted by associative odors from his handler or from the multitude of sources present during field work. Dr. Craig further testified that spontaneous recovery, i.e. reversion to pre-training behavior, is common because a dog will seek the path of least resistance. Therefore, the handler must be constantly vigilant to make sure that the dog does not pick up false cues or bad habits.

Maintenance of a dog's reliability depends on progressive training and daily documentation of the dog's activities. Dr. Craig emphasized that thorough and complete daily documentation is "extremely important" and is mandatory for proper on-going training. The handler must design the dog's training schedule based on perceived problems in the field, and it is very important to document false alerts in the field because they are warning signs to the handler that there may be problems with the dog. It is insufficient for the handler to rely on other law enforcement officers to keep detailed records on the dog because they will not be designing or conducting the training sessions. If potential problem areas are unknown, training has little value because it is not tailored to address the dog's deficiencies and the training exercises will have low task difficulty.

Detective Lujan's practice prior to October 1994 was not only contrary to Dr. Craig's recommendations but also to the written requirements set forth in Global's manual. Global's training manual provided extensive direction on how to properly train a dog to maintain the dog's reliability. Global's manual made it clear that proficiency training and record-keeping were critical. "[Y]ou are the key to the success of [Global's] training and to the continued success of your dog once you leave [Global]. If you fail to provide the proficiency training needed to maintain the dog's proficiency, and your's, then our efforts have been wasted." Global openly warned graduating dog handlers that "[t]he credibility and ability to conduct effective training is only as good as the records you maintain on your dog." It is unquestioned that Global considered accurate documentation and continued training to be essential in maintaining the dog's reliability.

■ The May 12, 1995 memorandum opinion and order makes clear that I had serious reservations related to Detective Lujan's failure to adhere to Global's express requirement that the handler properly document the dog's daily activities. In fact, I stated that it would "behoove whoever in the future signs an affidavit for a search warrant relying on an alert by Bobo to explain to a neutral magistrate the full background of Detective Lujan's slipshod recordkeeping and consequent cloud on Bobo's reliability." The omission from Agent Small's affidavit of any mention of Detective Lujan's lack of proper record keeping was a material omission that, had it been included in Agent Small's affidavit, would have negated Agent Small's statement that Bobo was still a certified narcotics canine as of August 18, 1994, the date Bobo alerted to defendant's luggage. Bobo had last been certified approximately ten months earlier during November, 1993.

Logic illustrates the deficiency in relying solely on Bobo's status as a previously certified narcotics canine to support a finding of probable cause as of a much later date. It is unquestioned that during November 1993 Bobo completed Global's extensive training program with a passing rate of 96% and, therefore, received Global's certification as of that time. Consequently, a neutral magistrate who read an affidavit stating merely that Bobo "is a certified narcotics canine" would be justified in concluding that Bobo's positive alert was a reliable indicator of a controlled substance, thereby supporting a finding of probable cause and issuance of a search warrant. The analysis fundamentally and logically changes, however, if the underlying foundation supporting Bobo's certified reliability is removed. Specifically, would a neutral magistrate be justified in relying on Global's certification if the training were flawed or incomplete? Certainly not. In effect, that is the situation presented in this case.

Global rightfully stands behind the dogs it trains as reliable narcotics-detecting canines, but with an important reservation. Global's manual dictates that the dog handler is "the key to success of [Global's] training and to the continued success of [the] dog once you leave [Global]. If you fail to provide the proficiency training needed to maintain the dog's proficiency, and your's, then our efforts have been wasted." [4] Global openly warned graduating dog handlers that "[t]he credibility and ability to conduct effective training is only as good as the records you maintain on your dog." The inescapable conclusion is that Global stood behind its graduation pass rate and certification only as long as the dog handler maintained the reliability of the dog through daily records and training sessions prescribed by Global. Dr. Craig further emphasized the importance of daily records when he stated that valid training sessions could be developed only if the handler documented the dog's field activities. In the absence of thorough and complete records, the handler would be unaware of potential problems and the designed training methods would be ineffective.

Put simply, Global expressed doubts about the reliability and continued success of a narcotics detecting canine it had certified in the absence of copious records and corresponding continuous field training. A certification pass rate of 96% would have only temporary value if the dog handler did not take active, continuing steps to maintain the dog's proficiency. As Dr. Craig testified, the dog will develop poor habits in the field and revert to the path of least resistance. If the handler is not diligently supervising the dog, the handler will fail to recognize potential problems as they arise. That is exactly the situation presented in this case. Detective Lujan failed to document Bobo's field searches in direct contradiction of Global's instructions. It appears that Global itself would have serious doubts about Bobo's continued reliability and success under these circumstances. A neutral magistrate could not, of course, place reliance on a certification rating that the issuing institution would no longer endorse. Here, however, Agent Small's affidavit did not give Judge Garcia any information regarding Detective Lujan's failure to follow the proper procedures mandated by Global. This omission made it impossible for Judge Garcia to make an informed decision as to the presence of probable cause.

Detective Lujan's poor record-keeping and failure to perform regular field training evidences a pattern of reckless supervision [5] of a canine with highly sensitive olfactory abilities. There is no evidence that Detective Lujan deliberately avoided telling Agent Small about his failure to follow Global's required record-keeping and field training or of Bobo's previous field searches. Nonetheless, Detective Lujan's omissions of fact recklessly misled the neutral magistrate into relying on the statement in the affidavit that Bobo was "a certified narcotics canine" to support a finding of probable cause. If Judge Garcia had been advised of Detective Lujan's flagrant disregard of Global's instructions to document Bobo's field searches, and Global's insistence on such records, he would not have found probable cause to issue

---

4. Officer Lujan testified that he was aware that Bobo could develop poor habits in the field that would reduce his effectiveness.

Q. That is a problem because the dogs continue to learn new things even when they are done at Global and they are in the field, they may pick up bad habits like that because once they are trained, they are not just trained forever, they might develop bad habits, right?
A. Right, that is why we have to train them and keep a training record.
Q. Global taught you how important it is to train and keep—for the handler in the field to keep an eye on how the dog is doing?
A. Yes, sir.

Q. So it doesn't find a shortcut or develop a problem that you might not be aware of, right?
A. Yes, sir.
Transcript, Motion Hearing, January 11, 1995

5. Detective Lujan was reckless in both his supervision of Bobo and in his failure to apprise Judge Garcia, either personally or through Agent Small, of his inexplicable failure or refusal to follow Global's instructions regarding post certification maintenance of reliability. I base my decision, however, only on his recklessness in failing to provide Judge Garcia with the critical information about his failure to perform mandated post certification responsibilities.

a search warrant.[6] Agent Small's affidavit should have contained the following information, all of which was known to Agent Small or Detective Lujan at the time the affidavit was submitted to Judge Garcia and all of which was directly related to the critical fact of Bobo's reliability:

— Agent Small, who was not Bobo's trained handler, had worked with Bobo on 10–15 prior occasions. During their work together, Bobo alerted in 2 instances where no seizable amounts of contraband were found.

— Bobo alerted to defendant's luggage on August 18, 1994.

— Bobo had been trained and certified, and recertified during November, 1993 by Global with a passing rate of 96%.

— Global, Bobo's certifying agency, mandated that Detective Lujan keep daily records of Bobo's activities and regularly field train if Bobo was to remain a reliable, certified dog.

— After recertification during November, 1993, Detective Lujan did not keep daily records, and he unilaterally decided not to keep daily records without conferring with Global.

— Detective Lujan conducted only sporadic field training with Bobo.

— Detective Lujan believed Bobo was a reliable dog who was usually successful but that he could not provide even close to reliable statistics about Bobo's actual performance.

Detective Lujan is the lone person familiar with the critical information regarding his lack of mandated record keeping among the small group of officers who routinely work at the Amtrak station. The failure to include in the affidavit information known to Detective Lujan that directly impacts Bobo's reliability was a material omission clearly critical in this case to a finding of probable cause. It was omitted in reckless disregard of whether it made Agent Small's affidavit misleading.[7] That information should have been included in Agent Small's affidavit in order to properly inform Judge Garcia. Had Judge Garcia been presented with this evidence, he would have concluded that there was not sufficient evidence of Bobo's reliability at the time he alerted to defendant's luggage on August 18, 1994, to support a finding of probable cause. The affidavit's remaining content—Agent Small's knowledge of defendant's itinerary and that defendant was carrying bags for an individual named "Will"—is insufficient, standing alone, to support a finding of probable cause.

IT IS THEREFORE ORDERED that:

(1) Defendant's motion to reconsider is GRANTED; and

(2) Defendant's motion to suppress physical evidence is GRANTED.[8]

---

**6.** It has been developed through evidentiary hearings in this case that Bobo's positive alerts uncovered seizable amounts of contraband in 40 out of 56 occasions for which records were located. However, Detective Lujan was unaware of Bobo's actual accuracy rate when Agent Small prepared the affidavit for search warrant in this case. Because Detective Lujan did not keep the records Global specified, it is impossible to know whether Bobo had alerted falsely other times. I should note that the question of Bobo's reliability in this case is restricted to the date of Bobo's alert to defendant's luggage. If Detective Lujan now keeps the proper records and performs the requisite field training, these reasons for questioning Bobo's accuracy would no longer exist.

**7.** "Recklessness may be inferred from omission of facts which are 'clearly critical' to a finding of probable cause." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir.1990) (citations omitted), *cert. denied*, 502 U.S. 814, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991).

**8.** The May 12, 1995 memorandum opinion and order is revised and superseded to the extent that it is inconsistent with this opinion.