**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 24 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

———————————————

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

AHMAD R. SHAYESTEH,

    Defendant-Appellant.

No. 97-4111
(D. Utah)
(D.Ct. No. 95-CR-106-S)

————————————————

**ORDER ON REHEARING**

————————————————

Before **SEYMOUR, BRORBY**, and **BRISCOE**, Circuit Judges.

————————————————

    This matter is before us on Defendant/Appellant's Petition for Rehearing of

this court's October 6, 1998 Order and Judgment affirming his conviction and

sentence. Mr. Shayesteh recites two grounds in support of his Petition: (1) the

court misconstrued his argument concerning the legality of law enforcement

questioning during a highway checkpoint detention, and (2) due to counsel's

inadvertent failure to include the transcript of the sentencing hearing in the record

on appeal, the court should permit him to supplement the record with the

sentencing transcript and address his sentencing issues on the merits.[1]  We deny

Mr. Shayesteh's Petition for Rehearing on the first ground, but grant his Petition

to consider only the sentencing issues he raised on appeal.

Mr. Shayesteh first argues the district court erred in sentencing because it

failed to include all the factual predicates of perjury in its obstruction of justice

finding.  During the sentencing proceeding, the district court expressly found

> that the adjustment for obstruction of justice is clearly appropriate ...
> that during the course of the trial ... Mr. Shayesteh did commit
> perjury, and that perjury is outlined at page 153 and 154 of the trial
> transcript, and that his testimony was false and committed clearly in
> a manner that establishes perjury.

A perjury finding in support of a sentence enhancement for obstruction of

justice "must contain two components," *United States v. Smith*, 81 F.3d 915, 918

(10th Cir. 1996):  (1) the finding must encompass all the factual predicates of

perjury (falsity, materiality, willful intent), and (2) the finding must specifically

identify the perjured testimony.  *Id*.  In this case the district court adequately

identified Mr. Shayesteh's perjured testimony.  However, the district court's

findings fail to set forth the factual predicates of materiality and willful intent

---

[1]  On October 21, 1998, this panel granted Mr. Shayesteh's motion to supplement
the record on appeal with the sentencing transcript.

necessary to support its general perjury finding. While we have little doubt the perjured testimony was both material and willful, the district court's finding in this case is indistinguishable from the finding we held deficient in *Smith*. 81 F.3d at 918-19. Accordingly, we must remand this case to the district court for further findings.

Mr. Shayesteh also challenges the adequacy of the district court's findings as they pertain to his request for a sentence reduction as a "minimal" or "minor" participant. The district court heard argument on this issue, but declined to give Mr. Shayesteh a corresponding reduction. The court denied the reduction without making an express finding concerning Mr. Shayesteh's role as a "minimal" or "minor" participant. Mr. Shayesteh argues the absence of an express finding on this issue constitutes error under *United States v. Underwood*, 938 F.2d 1086 (10th Cir. 1991). We agree. Although there is no legal requirement that the sentencing judge state specific reasons to support his finding that a defendant is not entitled to an adjustment as a "minimal" or "minor" participant, *see United States v. Donaldson*, 915 F.2d 612, 615-16 (10th Cir. 1990), 18 U.S.C. § 3553(c) mandates that the judge make an express finding as to whether such an adjustment is warranted. Absent a statement of the reasons for a particular sentence, including findings as to each guideline adjustment issue the parties raise, we are

left to speculate as to the validity of that sentence. *See id.* at 616; *Underwood*, 938 F.2d at 1092. We therefore remand to the district court for an express finding on the issue of whether Mr. Shayesteh was a "minimal" or "minor" participant in the drug offense.

In summary, we grant Mr. Shayesteh's Petition for Rehearing for the limited purpose of considering the alleged sentencing errors on the merits. On review of those issues, we remand this case to the district court for additional findings in accordance with this order. We affirm Mr. Shayesteh's conviction and sentence in all other respects.

                                      **Entered by the Court:**


                                      **WADE BRORBY**
                                      United States Circuit Judge

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**OCT 6 1998**

**TENNTH CIRCUIT**

_____

**PATRICK FISHER**
**Clerk**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

AHMAD R. SHAYESTEH,

    Defendant-Appellant.

No. 97-4111
(D. Utah)
(D.Ct. No. 95-CR-106-S)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **SEYMOUR, BRORBY**, and **BRISCOE**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Mr. Shayesteh was convicted of two counts of possessing a controlled

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The first count involved cocaine and the second methamphetamine. The district court sentenced him to 262 months of incarceration. Mr. Shayesteh appeals, asserting that the district court should have suppressed certain evidence and that it erred in sentencing him and in denying his motion for a new trial. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm the conviction and the sentence.

On May 22, 1995, the Utah Highway Patrol filed an application with a state court for authority to establish and operate an administrative traffic checkpoint.[1] A state magistrate judge granted permission to do so. The order provided the roadblock was for purposes of checking drivers' licenses and registrations, and looking for impaired drivers. The order also provided, in part: "[U]nless the officer making the initial contact ... has reasonable suspicion that criminal activity has occurred ... the officer shall not further detain the vehicle or its occupants nor ask for consensual permission to search the occupants or the vehicle."

---

[1] The application was filed pursuant to Utah's Administrative Traffic Checkpoint Act which can be found at § 77-23-101 to 105 of the Utah Code Annotated. In general terms, this law allows a magistrate to issue written authority to the Highway Patrol to establish and operate a traffic checkpoint under specified conditions. Utah Code Ann. § 77-23-104.

-2-

The roadblock was set up and operating on a highway in southern Utah on Memorial Day 1995. Northbound vehicles were stopped and then sent on their way if there were no irregularities in their license and registration and if the driver did not appear impaired. If there was a problem, the driver and car were sent off to the right lane, a secondary checkpoint.

Mr. Shayesteh drove up to the checkpoint around five o'clock in the afternoon. He was the sole occupant of his car. Trooper Joe Reynolds asked him for his license and registration. Because Mr. Shayesteh could not find his registration, the trooper directed him into the secondary checkpoint area.

Trooper Reynolds went to his vehicle, ran a registration check, and learned the vehicle was registered to Mr. Shayesteh. The trooper returned Mr. Shayesteh's license to him and told him everything was fine. At that point, Mr. Shayesteh was free to leave. However, he was unable to leave as there were vehicles in front of and behind him. While waiting for a chance to merge Mr. Shayesteh's vehicle back into the traffic lane, Trooper Reynolds carried on a short conversation with him. The trooper engaged in this conversation in order to be friendly.

-3-

The trooper asked Mr. Shayesteh where he was going. Mr. Shayesteh said he was going to Salt Lake City for a few days. Because no luggage was visible in the car, the trooper asked Mr. Shayesteh where his luggage was and Mr. Shayesteh responded he did not have any. The trooper then asked what was in the trunk, and Mr. Shayesteh told him the trunk was empty, and volunteered "would you like to look?" Trooper Reynolds replied "sure." Mr. Shayesteh got out of the car and the trooper frisked him and searched the passenger compartment for weapons. Mr. Shayesteh then opened the trunk with his key. Contrary to Mr. Shayesteh's earlier statement, the trunk contained two duffle bags. Mr. Shayesteh said the bags were not his.

The trooper took one of the bags out of the trunk to see if there was anything behind it. A county sheriff's officer was present with a certified drug detection dog, although the dog was not being used at the roadblock site. The dog, a Chesapeake Bay Retriever, sniffed the bag on the ground and alerted. Mr. Shayesteh was then handcuffed, and a search of the bag revealed a large quantity of cocaine and methamphetamine.

Mr. Shayesteh moved to suppress the drugs. The motion was referred to a magistrate judge. The magistrate judge held two hearings on the matter. Mr.

Shayesteh testified at one of the hearings. The gist of his testimony was that he did not consent to the search and only did as he was ordered. He denied that the dog alerted. He described the fifty-five pound retriever as a "very tiny, very small dog," no bigger than the officer's foot. He further testified the dog did not react to the bag, but the officer did by picking it up, sniffing it, and stating he smelled marijuana. The magistrate judge issued a Report and Recommendation recommending denial of the motion. The district court adopted the Report and Recommendation in its entirety over Mr. Shayesteh's objection, and denied the motion.

Mr. Shayesteh also testified at trial. He stated a man in Arizona asked him to deliver the bag in which the drugs were found to Utah, and that he had never opened the bag. Mr. Shayesteh further testified that while he was in jail, a trooper came to him with a ziplock baggie and had him touch it, which was how his fingerprints came to be on a baggie of drugs found in the bag. Despite this testimony, the jury found him guilty on both charges.

At sentencing, the district court increased the offense level by two points for obstruction of justice based upon the fact Mr. Shayesteh committed perjury at trial by testifying under oath that he was framed by the officers and at the motion

to suppress hearing with his testimony concerning the dog. The sentencing court also failed to grant Mr. Shayesteh's motion for a downward departure for being a minimal participant.

After sentencing, the district court denied Mr. Shayesteh's motion for a new suppression hearing, new trial, and request for an evidentiary hearing.

On appeal, Mr. Shayesteh raises the following issues: (1) the trooper detained him in violation of the roadblock authorization; (2) his consent was tainted by his improper detention; (3) he did not consent to the search, and the dog alert did not provide probable cause for a search; (4) the district court erred in enhancing his sentence for perjury; (5) the district court erred by not considering his motion for sentence reduction because he was a minor participant; (6) the district court should have granted him a new trial due to ineffective assistance of counsel; and (7) the district court should have granted an evidentiary hearing to see if a new trial was warranted by newly discovered evidence.

***Motion to suppress issues***

In support of his contention that the district court erred in denying his motion to suppress, Mr. Shayesteh makes three arguments. He claims the trooper

detained him after returning his license, in violation of the court's order granting authority for the roadblock. He argues his consent to search the car was tainted by the illegal detention. And, he argues the district court erred in finding that he consented to the search and that the dog sniff established probable cause for the search of the bag.

First, Mr. Shayesteh argues the trooper's questioning of him after his license had been returned constituted an illegal detention, rendering the resulting search unlawful. He concedes the roadblock provided a legitimate basis for the initial stop. Therefore, he only complains of the trooper's actions after his driver's license was returned.

The district court adopted the magistrate judge's factual findings. The magistrate judge found:

> The officer told the defendant everything was alright and gave the defendant's license back and he took it and placed it in his wallet. Defendant was free to go at that point. However, defendant could not immediately reenter the flow of traffic because there was a vehicle with a boat in front of him and a vehicle behind him. Traffic would not permit his immediate entry into a lane of travel to go on his way.

"When we review an order granting a motion to suppress, we accept the trial court's factual findings unless clearly erroneous, and we view the evidence in the

light most favorable to the district court's finding." *United States v. Zapata*, 997 F.2d 751, 756 (10th Cir. 1993) (internal quotation marks and citation omitted). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

Mr. Shayesteh contends the trooper's actions exceeded the scope of the limitations provided in the roadblock authorization. His arguments on this point hinge on his claim the magistrate judge erred in finding that the trooper's questions did not constitute a detention. The magistrate judge found Mr. Shayesteh was not detained by the trooper, he was detained by the position of the other vehicles at the checkpoint. Mr. Shayesteh fails to raise anything in the record that demonstrates this finding to be clearly erroneous.[2]

Mr. Shayesteh also argues the trooper exceeded his authority under the

---

[2] Mr. Shayesteh discusses the conflicting evidence on traffic volume at the time he was delayed from leaving the roadblock. However, the magistrate judge's factual finding was premised on the location of vehicles that were out of the traffic lane, blocking Mr. Shayesteh's car. Mr. Shayesteh's discussion of traffic volume and roadblock procedures do not address this finding.

roadblock authorization because "[a] plain reading of the Authorization can only lead to the conclusion that consent searches were absolutely prohibited." This is simply not true. Our plain reading of the authorization leads to the conclusion that asking for permission to search a vehicle was prohibited. Trooper Reynolds did not ask for permission to search Mr. Shayesteh's car; therefore, he did not violated the terms of the authorization.

As long as Trooper Reynolds was not the cause of the delay, he was not prohibited from engaging Mr. Shayesteh in conversation. *See United States v. Angulo-Fernandez*, 53 F.3d 1177, 1179 (10th Cir. 1995) (involving trooper and driver of broken down car). The magistrate judge had the opportunity to evaluate Trooper Reynolds and Mr. Shayesteh as they testified about the stop. At the conclusion of this testimony, the magistrate judge found the trooper's testimony credible and Mr. Shayesteh's incredible. The record simply does not support Mr. Shayesteh's contention that the magistrate judge was clearly erroneous in finding Trooper Reynolds was not the cause of the delay.

Second, Mr. Shayesteh argues any consent to search he may have given was tainted by the initial illegality of the detention. As we have determined there was no illegal detention in this case, we need not address this argument.

Third, Mr. Shayesteh contends the district court erred in finding he consented to the search. The test is whether the consent was voluntarily given under the totality of the circumstances. *United States v. Price*, 925 F.2d 1268, 1270 (10th Cir. 1991).

The magistrate judge's factual findings on this point, which were adopted by the district court, included:

> While waiting for the traffic to clear in the collection lane and to free defendant's vehicle to move back into the flow of traffic, Officer Reynolds had a short friendly conversation with defendant. ... The officer did not ask if defendant had any drugs or guns and did not ask for the permission of defendant to search the vehicle. The defendant ... volunteered "would you like to look [in the trunk]?"

The magistrate judge also determined Mr. Shayesteh opened the trunk of his car without a request from the trooper. Mr. Shayesteh claims these findings are "preposterous and clearly erroneous." A review of the transcripts from the hearings on the motion to suppress shows these findings were fully supportable and were certainly not clearly erroneous. We agree with the magistrate judge that Mr. Shayesteh's consent was voluntarily given.[3]

---

[3] Mr. Shayesteh claims "it is preposterous to conclude that the defendant would claim that he did not have anything in the trunk and then offer the trooper a look in the trunk, knowing he had luggage in the trunk." Reiterating his point, he states such a notion is "inconceivable." It is neither preposterous nor inconceivable. More than a few criminals have made such offers in the hopes that law enforcement officials would think they had nothing to hide. Such reliance on hyperbole instead of evidence is a sure sign of

Mr. Shayesteh also argues that by subjecting him to a frisk and by letting other law enforcement officials gather, the trooper created a coercive environment that vitiated any consent. However, Mr. Shayesteh volunteered to allow the trooper to look in the trunk before the frisk and before any other officers or troopers joined the two. Because of the order of events, these factors could not have affected the voluntariness of Mr. Shayesteh's offer to allow a search.[4]

Mr. Shayesteh also argues his consent limited the scope of the search to a "look" in the trunk. By moving and searching the bag, he argues, the trooper exceeded the terms of the consent. However, once Mr. Shayesteh opened the trunk and it was found, contrary to his previous statements, to contain luggage, the trooper had reasonable suspicion justifying further investigation. Furthermore, moving one bag out of the trunk to see if anything was behind it would be consistent with permission to take a "look" in the trunk.

Mr. Shayesteh also contends the narcotics sniffing dog's alert to the bag

_____

a weak argument.

[4] Mr. Shayesteh cites *United States v. Turner*, 928 F.2d 956 (10th Cir.), *cert. denied*, 502 U.S. 881 (1991), in support of his argument on this point. That case, however, dealt with a show of authority *prior to consent*. *Id.* at 959.

-11-

from his trunk did not provide probable cause to search the bag. The district court case cited by Mr. Shayesteh in support of his argument on this point, *United States v. Kennedy*, 955 F. Supp. 1331 (D.N.M. 1996), has since been reversed by this Circuit, *see United States v. Kennedy*, 131 F.3d 1371 (10th Cir. 1997), *petition for cert. filed* (U.S. Jun. 22, 1998) (No. 97-9625). An alert by a certified narcotics sniffing dog provides probable cause for a search and arrest. *United States v. Williams*, 726 F.2d 661, 663 (10th Cir.), *cert. denied*, 467 U.S. 1245 (1984). As there is no question the dog used in this case was certified, there was probable cause for the search of the bag and its contents.

For these reasons, we affirm the district court's denial of Mr. Shayesteh's motion to suppress.

***Sentencing issues***

Mr. Shayesteh argues the district court erred in sentencing because it enhanced his sentence for perjury and because it refused to consider his motion for a reduction based on his alleged status as a minimal participant. Unfortunately, he failed to provide a copy of the sentencing hearing transcript in the record on appeal. We cannot determine whether the district court failed to make a full finding of obstruction of justice, encompassing all of the factual

predicates of perjury, as Mr. Shayesteh contends, without reference to the transcript of the hearing. Similarly, we cannot review whether the district court failed to properly address Mr. Shayesteh's motion for a downward departure for being a minimal participant (indeed, we cannot even determine if Mr. Shayesteh made such a motion) without reference to the transcript of the hearing.

"This Court will decline to consider a claim in the absence of the appropriate documents in the record on appeal, since any discussion of such a claim would be speculation." *United States v. Vasquez*, 985 F.2d 491, 494 (10th Cir. 1993). It is the appellant's responsibility to insure that all the necessary materials are part of the record. *Id.* at 495. *See* Fed. R. App. P. 10; 10th Cir. R. 10.1, 10.3, 10.3.1(c). The transcript of the sentencing hearing is essential to the issues Mr. Shayesteh raises. We will not decide them without it.

### *Motion for new trial issues*

According to Mr. Shayesteh, the district court should have granted him a new trial due to the ineffective assistance of his trial counsel.[5] This court requires claims of ineffective assistance of counsel to be brought on collateral

---

[5] Mr. Shayesteh's counsel appropriately raised this issue as obligated by the Supreme Court's decision in *Anders v. California*, 386 U.S. 738 (1967).

review, not direct appeal. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995). We see no reason not to apply that rule in this case.

Mr. Shayesteh argues the district court erred in denying his motion for a new trial and in denying him an evidentiary hearing on the issues raised in the motion. "We review the denial of a motion for a new trial for an abuse of discretion." *See United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997).

Federal Rule of Criminal Procedure 33 authorizes courts to grant motions for new trials "if required in the interest of justice." Such motions are "not regarded with favor and should only be granted with great caution." *Sinclair*, 109 F.3d at 1531. When a motion for a new trial is premised on newly discovered evidence, the defendant must show:

> "(1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal."

*Id.* (quoting *United States v. Stevens*, 978 F.2d 565, 570 (10th Cir. 1992)).

The new evidence offered by Mr. Shayesteh consists of photographs of the roadblock scene and a newspaper article quoting Trooper Reynolds. The

government did not give the photographs to the defense until well after the suppression hearing. Mr. Shayesteh contends the photographs were relevant to the suppression question because they demonstrate he could have easily re-entered traffic. The district court determined the photographs would not have led to a different result on the motion to suppress. We agree. The photographs do not reflect the scene at the time the trooper was talking to Mr. Shayesteh, so they can provide no information about whether he was blocked in by traffic. As such, they fail the fourth prong of the test mentioned above; they are not material to the principal issues involved. The district court did not abuse its discretion in denying a new trial based on these photographs.

Mr. Shayesteh also complains about the apparent destruction of the negatives of the photographs taken around the time of his arrest. As the actual photographs exist, we can see no prejudice or harm in the destruction of the negatives.

During the suppression hearing, Trooper Reynolds testified he had no suspicions about Mr. Shayesteh or his vehicle. In a local newspaper article on the arrest, however, the trooper is credited with "admitting to having a second sense about the car and driver." Mr. Shayesteh's counsel did not discover the article

until after trial. Because the article was published before trial, the district court refused to consider it new evidence for Rule 33 purposes. The district court also determined the article was no more than impeaching evidence. Mr. Shayesteh contends this was error. We believe a newspaper article that does not even provide a direct quotation on the material point is merely impeaching evidence. The district court did not abuse its discretion in denying a new trial or suppression hearing in light of this evidence.

Mr. Shayesteh also argues the district court should have granted him an evidentiary hearing to determine if any prejudice resulted from sending one of the seized bags to the jury room during deliberations. His counsel did not object to the admission of the bag during trial. At trial, Mr. Shayesteh testified he put personal items in the bag and that he had stored the bag in the trunk of his car. Mr. Shayesteh claims a post-trial inspection showed the bag contained different items than he had put in the bag. He makes no attempt to explain why he thinks exposure of these items to the jury may have been prejudicial. The district court determined there was no evidence to support the claim that the jury may have been influenced by the contents of the bag, or to support the assertion that the contents of the bag were prejudicial. Mr. Shayesteh fails to persuade us these findings were an abuse of discretion.

We have fully reviewed the record and Mr. Shayesteh's argument and we see no grounds for reversal.  Therefore, we **AFFIRM** the conviction and the sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge