**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 19, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JESUS MANUEL GALLEGOS,

    Defendant-Appellant.

No. 14-2081

(D.C. No. 1:11-CR-02994-WJ-2)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **BALDOCK** and **BACHARACH**, Circuit Judges.

    Defendant Jesus Manuel Gallegos pled guilty to one count of kidnapping under 18 U.S.C. § 1201(a)(1) and was sentenced to 360 months' imprisonment. Gallegos now appeals his sentence, contending that the court incorrectly interpreted what constitutes a "permanent bodily injury" for purposes of imposing a sentencing enhancement. Having jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we vacate Gallegos's sentence and remand for a new sentencing.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

On November 5, 2011, Jesus Manuel Gallegos and Brandon Jones approached Javier Vasquez at random in front of Vasquez's vehicle in a grocery store parking lot in El Paso, Texas, and ordered Vasquez into the vehicle. Jones and Gallegos got into the car, and Jones demanded that Vasquez give them his Personal Identification Number (PIN) and direct them to a bank to make a withdrawal from one of Vasquez's bank accounts. Gallegos, who was sitting behind Vasquez, grabbed Vasquez's head from behind, pressed his thumb into Vasquez's left eye, and also demanded the PIN.

Gallegos and Jones withdrew money from several of Vasquez's bank accounts and drove Vasquez through Las Cruces, New Mexico, and Albuquerque, New Mexico as part of a purported trip to Colorado. Gallegos and Jones struck Vasquez multiple times, threatened to kill or sexually assault Vasquez, and at one point hog-tied Vasquez with duct tape. In the early morning hours of November 6, 2011, Jones pulled over to rest at a truck stop in New Mexico, where both he and Gallegos fell asleep. Vasquez then escaped from the vehicle and called law enforcement, who arrested Jones and Gallegos.

Gallegos was indicted on one count of kidnapping under 18 U.S.C. § 1201(a)(1) and one count of aiding and abetting kidnapping under 18 U.S.C. § 2. Gallegos pled guilty to the kidnapping charge. The presentence report (PSR) recommended a four-level sentencing enhancement based on Gallegos causing

2

"permanent or life-threatening bodily injury" to Vasquez's left eye.[1]  The report stated that Vasquez suffered blurred vision in his left eye immediately after the abduction and that a later exam indicated that Vasquez's left pupil would permanently be more dilated than his right pupil, which can cause discomfort in bright lights.

Gallegos objected to that increase, arguing that Vasquez's injury was not substantial and therefore did not qualify for a permanent injury enhancement under the Sentencing Guidelines.[2]  The Government responded to Gallegos's objections to the PSR by arguing for a different bodily injury enhancement.  The Government argued that Vasquez's injury was a "serious bodily injury" subject to a two-level enhancement under U.S.S.G. § 2A4.1 because "[t]he impairment is protracted and is expected to be permanent."  ROA, Supp. Vol. I at 62-63.  The Sentencing Guidelines define "permanent or life-threatening bodily injury" as "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent."  U.S.S.G. § 1B1.1 cmt. 1(J).  The Guidelines define "serious bodily injury" as "injury

---

[1] The sentencing guideline for kidnapping offenses allows for a two-level enhancement for "serious bodily injury," a four-level enhancement for "permanent or life-threatening injury," and a three-level enhancement for an injury that falls between the two categories.  U.S.S.G. § 2A4.1.

[2] Gallegos also argued below that the Government failed to prove that he caused the injury, but he does not raise that argument on appeal.

3

involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. 1(L). In an addendum to the PSR, the probation officer reiterated that Vasquez's pupil injury was permanent, that Vasquez continued to be treated for it, and that "a 4 level increase is applicable." ROA, Vol. III at *2.

At sentencing, the Government called Dr. Robert Avery as an expert witness to testify regarding Vasquez's eye condition. Dr. Avery had examined Vasquez in April 2013, approximately a year and a half after his abduction, and determined that Vasquez's "best-corrected visual acuity was 20/20 in both eyes," that "[h]is intra-ocular pressure, eye movements, and anatomic structures were all normal," but that his left pupil had "an inability . . . to constrict fully when stimulated by bright lights." ROA, Vol. II at 32. Dr. Avery concluded in his written report that Vasquez's pupil "impairment is protracted (having already lasted over a year) and is expected to be permanent," but that "[i]t should not worsen" or lead to further deterioration and "is more an issue of discomfort in certain settings." Id. While examining Vasquez, Dr. Avery noted a difference of 0.4 millimeters between Vasquez's normal right pupil and impaired left pupil when exposed to bright lights.

At the joint sentencing hearing of Jones and Gallegos, Dr. Avery testified to essentially the same conclusions. He also stated that, although he had not

4

examined Vasquez since 2013, he did not expect any further significant change in Vasquez's condition and repeatedly described the impairment as both "protracted" and likely to be permanent. ROA, Supp. Vol. IV at 15, 17-19, 28-31, 36-37. Dr. Avery described the problems that would likely result from Vasquez's dilated left pupil being exposed to bright light by stating, "it can interfere with your vision, but the most—the most common thing is it's uncomfortable."[3] Id. at 13.

During the sentencing hearing, Gallegos continued to object to the PSR regarding Vasquez's eye injury, stating that Vasquez's injury should be "place[d] . . . in the appropriate context" and that discomfort in bright lights was not a significant impairment. Id. at 115. The court stated that Dr. Avery had competently testified that the pupil condition "is likely to be some permanent impairment." Id. at 116-17. In the court's sentencing of Jones, which it explicitly incorporated by reference into its sentencing of Gallegos, id. at 116, the court stated: "[W]hat [Dr. Avery] testified to is that the left pupil of the victim was injured such that . . . in a time of bright light, the left pupil, it can cause interference with vision. . . . [I]t was his medical opinion that the victim had recovered as much as he would but was likely to have some permanent protracted impairment of the left pupil." Id. at 98. The court stated with regard to Gallegos:

_____

[3] Dr. Avery expanded on the vision point later, stating that there were no problems with Vasquez's corrected visual acuity, but that the ability for the pupil to take in light may cause other issues with vision of which he could not be as medically certain. ROA, Supp. Vol. IV at 24-28, 34-36.

5

[B]ased on the, you know, the guidelines, they are what they are, and definitions are very mechanical. But based on the testimony of—of Dr. [Avery], it meets the requirement, the injury meets—and that is the protracted impairment of the function of the pupil and Dr. [Avery's] testimony that it's not going to get any better than it is and that there is some impairment meets the requirement for permanent bodily injury as that term is defined by . . . Sentencing Guideline Section 2A4.1(b)(2)(A).

Id. at 117-18. The court then concluded that the four-level sentencing enhancement was applicable and imposed a sentence of 360 months' imprisonment.

## II

On appeal, Gallegos only challenges the procedural reasonableness of his sentence. "We review sentences for reasonableness under a deferential abuse of discretion standard." United States v. Haley, 529 F.3d 1308, 1311 (10th Cir. 2008) (citing Gall v. United States, 552 U.S. 38, 51 (2007)). "A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence." Id. "This court reviews the district court's legal conclusions under the Sentencing Guidelines *de novo* and its factual findings for clear error, affording great deference to the district court's application of the Guidelines to the facts." United States v. Eaton, 260 F.3d 1232, 1237 (10th Cir. 2001).

6

Gallegos contends that the district court committed legal error by incorrectly applying the four-level sentencing enhancement[4] for "permanent or life-threatening bodily injury." Aplt. Br. at 11. "When adjusting a defendant's base offense level under the Guidelines, a district court 'must make a finding that the requirements for the adjustment have been satisfied.'" United States v. Montoan-Herrera, 351 F.3d 462, 466 (10th Cir. 2003) (citing United States v. Underwood, 938 F.2d 1086, 1091 (10th Cir.1991)). "[A]lthough the finding for an adjustment need not be particularized, a finding is necessary because without it we are left to speculate as to whether the district court applied the correct legal standard."[5] Id. "However, when it is apparent from the court's optional

_____

[4] The Guidelines and caselaw largely refer to offense-level sentence enhancements under Chapter 2 as "enhancements" and "adjustments" interchangeably. We see no reason to review sentence adjustments under Chapter 2 and Chapter 3 differently because both chapters relate to calculating the Guidelines sentencing range, in contrast to variances and departures, which deviate from the recommended Guidelines range. See United States v. Beaulieu, 900 F.2d 1531, 1535 (10th Cir. 1990) ("We have held, in cases of departures, that the trial court must specify its reasons for *departure* from the Guidelines and we must vacate the sentence if the trial court fails to do so. . . . In the case before us, however, we do not have a departure from the Guidelines, but instead an upward *adjustment* to a point still within the Guidelines."); see also U.S.S.G. § 1B1.1 cmt. 4(A)-(B) (referring to Chapter 2 modifications as "adjustments"); U.S.S.G. § 1A1.4(b) (discussing the Guidelines' view of departures as compared to enhancements and adjustments).

[5] In other cases, we have required particularized findings, but Underwood indicates that the baseline is "a finding that the requirements for the adjustment have been satisfied." United States v. Underwood, 938 F.2d 1086, 1091 (10th Cir. 1991). But see United States v. Tissnolthtos, 115 F.3d 759, 761-62 (10th Cir. 1997) (requiring more particularized findings than a victim being "elderly" to

(continued...)

7

discussion that its factual finding may be based upon an incorrect legal standard, we must remand for reconsideration in light of the correct legal standard." United States v. Maldonado-Campos, 920 F.2d 714, 717-18 (10th Cir. 1990) (internal citations omitted).

Under the Sentencing Guidelines, the definition of "permanent or life-threatening bodily injury" is: "[1] injury involving a substantial risk of death; [2] loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or [3] an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1 cmt. 1(J) (numerals added). The second prong of that definition is at issue in this case; at no point in the proceedings was Vasquez's pupil dysfunction discussed as life-threatening or disfiguring. Gallegos argues that the district court did not properly apply the definition of "permanent or life-threatening bodily injury" when imposing the four-level enhancement because it interchangeably used the terms "protracted"—which comes from the Sentencing Guideline definition of "serious bodily injury"—and "permanent" to describe Vasquez's impairment. U.S.S.G. § 1B1.1 cmt. 1(J), 1(L).

------

[5](...continued)
support a vulnerable victim adjustment); United States v. Wacker, 72 F.3d 1453, 1476 (10th Cir. 1995) ("Before imposing an enhancement based on a defendant's role in the offense, the sentencing court must make specific factual findings as to that role.").

We agree that it is unclear from the district court's discussion whether it applied the correct definition of permanent bodily injury. The district court stated at various points in the hearing that the injury was (1) "a pupillary protracted impairment of the function"; (2) "some permanent protracted impairment of the left pupil"; (3) "this protracted impairment function [sic] to the left pupil"; (4) "some permanent impairment"; and (5) "the protracted impairment of the function of the pupil." ROA, Supp. Vol. IV at 98-99, 116-17. This discussion blurred the lines between the definitions of "permanent or life-threatening bodily injury" and "serious bodily injury." The terms "permanent" and "protracted" are not interchangeable, and the longevity of an impairment is one crucial distinction between a serious bodily injury enhancement and a permanent bodily injury enhancement.

Another distinction between the two levels of enhancement is the severity of the impairment; a permanent bodily injury enhancement requires that the impairment at issue be "substantial," while the serious bodily injury enhancement has no severity requirement. U.S.S.G. § 1B1.1 cmt. 1(J), 1(L). In this case, the district court engaged in a relatively extensive discussion of the medical evidence presented, but made virtually no reference to the substantiality of Vasquez's impairment. The court remarked on the strong qualifications of the Government's witness and stated "what [Dr. Avery] testified to is that the left pupil of the victim was injured such that . . . in a time of bright light, the left pupil, it can cause

9

interference with vision." ROA, Supp. Vol. IV at 98. The court then noted that Dr. Avery testified that there was "some permanent protracted impairment," and concluded that a four-level enhancement for permanent bodily injury was applicable. Id. at 98, 117. At best, the court made a finding of "some" impairment, but it did not clearly state whether that impairment was "substantial."[6] Although we do not agree with Gallegos that the court was required to make a *particularized* finding that Vasquez's impairment was substantial, the district court's lack of discussion on this matter adds to this court's significant doubts about whether the district court applied the correct definition of "permanent or life-threatening injury."[7]

_____

[6] Gallegos notes that the Government at one point sought a two-level "serious bodily injury" enhancement and that the prosecutors and Probation Office were at odds in the enhancement they sought. This fact provides context for some of the confusing aspects of the sentencing hearing. For one, it explains in large part why Dr. Avery, who the district court rightfully noted was a highly qualified medical expert, repeatedly labeled the injury as "protracted" and did not discuss the severity of the injury in detail. The frequent use of "protracted" in Dr. Avery's testimony also likely explains why the district court introduced that term into its own discussion of the enhancement.

[7] The Government attempts to skirt the issue of substantiality by contending that Vasquez's pupil injury can properly be understood as the "loss" of his pupil's ability to admit light properly and that no finding of substantiality is required if the injury can be categorized as a "loss." Aplee. Br. at 10. However, as Gallegos notes, such a definition of "loss" would completely negate the inclusion of "substantial impairment" in the definition of permanent bodily injury. There was no contention in this case that Vasquez's pupil does not dilate and contract at all or that his pupil is entirely missing, indicating a complete "loss" of that bodily function. If every impairment of a bodily function could be recharacterized as a "loss" of the full range of functioning, there would be no need for the "substantial

(continued...)

10

Thus, we conclude that "appellate review of the propriety of applying this serious enhancement is hindered by the absence of a clear picture of the reasoning employed by the sentencing court." United States v. Torres, 53 F.3d 1129, 1143 (10th Cir. 1995). Although we give no opinion on the merits of which enhancement is most appropriate in this case, the district court's failure to distinguish between the requirements for a two-level sentencing enhancement and a four-level sentencing enhancement constitutes a procedural error. This error is not harmless because Gallegos was given a sentence at the bottom of the recommended range. See United States v. Begay, 470 F.3d 964, 976 (10th Cir. 2006), rev'd and remanded on other grounds, 553 U.S. 137 (2008). Therefore, we must remand this case for resentencing.

---

[7](...continued) impairment" language in the definition. We will not read such superfluity into the Guidelines. See In re Dawes, 652 F.3d 1236, 1242 (10th Cir. 2011) (noting that "one of the most basic interpretive canons" of statutory construction is that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"). Moreover, the district court did not rely on the "loss" language. Instead, it repeatedly discussed the "impairment" of Vasquez's pupil. ROA, Supp. Vol. IV at 98, 116-17. We thus reject the Government's argument that Vasquez's pupil dysfunction constitutes the "loss . . . of the function of a bodily member, organ, or mental faculty that is likely to be permanent" under the definition of "permanent or life-threatening bodily injury." U.S.S.G. § 1B1.1 cmt. 1(J).

## III

For the reasons set forth above, we VACATE Gallegos's sentence and REMAND to the district court for a new sentencing in accordance with this order.

Entered for the Court


Mary Beck Briscoe
Chief Judge