**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 31, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRANDON LAWRENCE JONES,

    Defendant - Appellant.

No. 17-2197
(D.C. No. 1:11-CR-02994-WJ-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

Brandon Jones appeals his sentence after pleading guilty to kidnapping.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

On the night of November 5, 2011, Javier Vasquez was leaving a University of

Texas at El Paso basketball game when he was accosted by Jones. Displaying what

appeared to be a pistol in his waistband, Jones ordered Vasquez into his vehicle. He

then called to another man standing nearby, Jesus Gallegos, who also entered

Vasquez's truck. Jones drove the vehicle, with Vasquez in the passenger seat and

Gallegos in the back.

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Jones demanded that Vasquez provide his personal identification number and direct them to a bank where Jones could withdraw funds. Gallegos grabbed Vasquez's head and face from behind and demanded the same. Vasquez complied, and Jones obtained funds from Vasquez's account at the bank. Jones then demanded more money from Vasquez, who guided Jones to a different bank in El Paso where Jones withdrew money several times in $300 increments. Jones gave Vasquez the withdrawal receipts, telling him he would "need this for court."

Vasquez begged to be released, noting that Jones and Gallegos had his truck and wallet. But the pair refused, fearing that Vasquez would contact the police. Nonetheless, it is clear that Jones and Gallegos lacked a coherent plan. Jones repeatedly mentioned going north on a road trip, and at times treated Vasquez almost as if he were a companion. He told Vasquez not to worry, and that he would be freed eventually. Jones also forced Vasquez to drink tequila. But for most of the misadventure, Jones and Gallegos essentially tortured Vasquez. Both men repeatedly struck Vasquez during the encounter. At one point, Vasquez told Jones he had missed a freeway entrance, prompting Jones to punch him in the head. Jones threatened to shoot Vasquez. Gallegos grabbed Vasquez from behind and drove his thumb into Vasquez's left eye. At another point, Gallegos noticed that Vasquez had loosened his seatbelt—in preparation for an escape attempt—and choked him with it.

Jones drove the truck to Las Cruces, New Mexico, and headed toward Albuquerque. While in New Mexico, Jones stopped at another bank branch and withdrew funds from Vasquez's account. Also while in New Mexico, the vehicle

2

approached a U.S. Border Patrol checkpoint. Jones threatened to kill Vasquez if he attempted to escape or alert Border Patrol at the checkpoint, saying "you may get me, but I already killed three people; one more's not gonna make a difference." Gallegos and Jones subsequently bound Vasquez's hands, legs, and ankles with duct tape, moved him to the back seat, and placed items over him. Apparently deciding that arrangement would appear too suspicious, however, the pair cut Vasquez free.

Jones stopped the truck at a rest stop near Clines Corner, New Mexico, where he and Gallegos fell asleep. After waiting to ensure the pair were actually unconscious, Vasquez escaped from the truck and contacted law enforcement. He was transported to a hospital in Albuquerque, where he was treated for pain in his head, neck, and jaw, and for blurry vision in his left eye. Jones and Gallegos were charged in federal court with kidnapping in interstate commerce in violation of 18 U.S.C. § 1201(a)(1). Jones pled guilty on December 28, 2012.

While in pretrial detention before his plea, Jones attempted to escape from the Torrance County Detention Center. He and another inmate climbed over a fence into a "dead man's zone" wearing extra sets of clothing. They tackled a guard and threw his radio over a fence, but were apprehended. After his plea, Jones was involved in an apparent second escape attempt, this time from the Santa Fe Correctional Facility. His cell bars were found to have been partially cut, and Marshals found paint matching the color of the bars in his cell. Jones was later found with a piece of metal. Marshals concluded he had used the metal object to saw into the bars, and used the paint to conceal his efforts.

3

The district court held a sentencing hearing in May 2014. At the hearing, Dr. Robert Avery testified that he conducted an exam of Vasquez in April 2013. Dr. Avery's exam concluded that, although Vasquez has good vision in both eyes, he suffers from a pupillary dysfunction in his left eye caused by trauma. As a result of this dysfunction, Vasquez's pupil does not constrict properly and allows too much light to enter the eye, causing discomfort and interfering with contrast enhancement. Dr. Avery did not expect the condition to resolve.

Vasquez also spoke at the sentencing hearing. He explained that Gallegos and Jones had beaten him, strangled him, and gouged his eye. Vasquez referred to the crime as the longest night of his life, and stated "it was a very painful thing." Vasquez also testified that, the morning after the kidnapping, he could not recognize his swollen face in the mirror. He described his appearance as "like Rocky at the end of the movie."

The district court imposed a sentence of 420 months' imprisonment. Jones' attorney failed to file a timely notice of appeal. However, Jones later obtained habeas relief based on ineffective assistance of counsel for that failing and the case was set for resentencing. While Jones' habeas case was proceeding, Gallegos prevailed in an appeal to this court challenging a sentencing enhancement for permanent bodily injury. See United States v. Gallegos, 610 F. App'x 786 (10th Cir. 2015) (unpublished). The probation office issued an addendum to Jones' Presentence Investigation Report in response to that decision. On resentencing, the district court imposed a new sentence of 360 months. Jones timely appealed.

4

## II

We review claims that a sentence is procedurally unreasonable for abuse of discretion. United States v. Halliday, 665 F.3d 1219, 1222 (10th Cir. 2011). In doing so, "we review de novo the district court's legal conclusions regarding the [G]uidelines and review its factual findings for clear error." United States v. Gantt, 679 F.3d 1240, 1246 (10th Cir. 2012). A district court abuses its discretion when it commits an error of law. United States v. Lopez-Avila, 665 F.3d 1216, 1219 (10th Cir. 2011).

Jones advances three challenges to the procedural reasonableness of his sentence. First, he argues the district court wrongly imposed a two-level enhancement under U.S.S.G. § 2A4.1(b)(2)(B). That provision applies "if the victim sustained serious bodily injury." Id. The term "serious bodily injury" is defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(L).

The district court found that Vasquez suffers protracted impairment of his left eye because of his pupillary dysfunction.[1] We agree. Dr. Avery examined Vasquez approximately a year-and-half after Jones' crime, and found he continued to suffer pupillary dysfunction. This length of time qualifies as protracted. See generally United States v. Tsosie, 124 F.3d 218 (10th Cir. 1997) (table) (unpublished) (injury

---

[1] The district court also found that Vasquez suffered extreme physical pain. Because we affirm the district court's conclusion as to protracted injury, we need not address this finding.

5

qualified as protracted under 18 U.S.C. § 113(f) based on testimony of continued numbness after similar period of time). Jones contends that pupillary dysfunction is insufficiently serious. But the structure of the Guidelines undermines this argument. Jones received a two-level enhancement for serious bodily injury rather than a four-level enhancement for permanent bodily injury. Compare U.S.S.G. § 1B1.1 cmt. n.1(J), with U.S.S.G. § 1B1.1 cmt. n.1(L). As we noted in Gallegos, a key "distinction between the two levels of enhancement is the severity of the impairment; a permanent bodily injury enhancement requires that the impairment at issue be 'substantial,' while the serious bodily injury enhancement has no severity requirement." 610 F. App'x at 790. We need not decide whether a de minimis impairment would qualify. Dr. Avery explained that pupillary dysfunction causes discomfort and can interfere with vision by precluding proper contrast enhancement. Such an impairment cannot be dismissed as de minimis.

Jones also challenges the district court's imposition of a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The district court imposed the enhancement based on Jones' attempted escape from the Torrance County Detention Center. An application note to the Guideline includes "escaping or attempting to escape from custody before trial or sentencing" on "a non-exhaustive list of examples of the types of conduct to which this adjustment applies." U.S.S.G. § 3C1.1 cmt. n.4. Although Jones acknowledges that the enhancement could apply, he contends the district court should have declined to impose it based on mitigating circumstances—specifically, the escape attempt occurred after Jones learned that he

6

faced a higher sentence than his attorney had suggested and he had previously suffered trauma during incarceration in a Mexican prison. We conclude the district court acted well within its discretion in finding the enhancement nevertheless applied.

In Jones' final procedural argument, he claims the district court erred in denying him a sentencing reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a). That provision allows for an offense-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Id. Admitting to the conduct that comprises the offense of conviction, as Jones did in pleading guilty, can qualify a defendant for the reduction. U.S.S.G. § 3E1.1 cmt. n.1(A). However, conduct resulting in an enhancement for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. n.4. The Guidelines acknowledge, however, that there could "be extraordinary cases in which adjustments under both §§ 3C1.1 and 3.E1.1 may apply." Id.

Jones argues that the district court relied on insufficiently reliable evidence as to his escape attempt from the Santa Fe Correctional Facility. But the district court held that Jones' escape attempt from the Torrance County Detention Center justified denial of the reduction, referencing the later attempt only as an alternative basis. Jones is correct that the district court could have granted him a reduction based on his guilty plea, which occurred after the Torrance County escape attempt. See United States v. Banks, 252 F.3d 801, 806 (6th Cir. 2001); United States v. Knight, 905 F.2d

7

189, 192 (8th Cir. 1990). But he has not demonstrated that the district court was required to do so. "Whether the defendant has clearly demonstrated acceptance of responsibility is a factual question we review only for clear error" and "the determination of the sentencing judge is entitled to great deference on review." United States v. Ivy, 83 F.3d 1266, 1292-93 (10th Cir. 1996). Jones points to the same mitigating circumstances identified above regarding his Torrance County attempt. But as with his prior argument, the district court acted within its discretion in concluding Jones' circumstances were not extraordinary.

### III

Jones also challenges the substantive reasonableness of his sentence. We review such claims for abuse of discretion. United States v. Smart, 518 F.3d 800, 805 (10th Cir. 2008). "[W]e afford substantial deference to the district court, and determine whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Balbin-Mesa, 643 F.3d 783, 788 (10th Cir. 2011) (quotation omitted). A sentence is presumptively reasonable if the district court correctly calculated the applicable Guidelines range and sentenced the defendant within or below that range. Id. Jones bears the burden of rebutting that presumption. See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006).

In attempting to carry this burden, Jones points to a number of potentially mitigating factors, including his difficult childhood, psychological and emotional issues caused in part by a traumatic stint in a Mexican prison, and substance abuse

8

problems. He also argues that his conduct was not related to the particular harm targeted by the federal kidnapping statute, crossing state lines to evade law enforcement. And he points to the need to avoid unwarranted sentencing disparities. Although Jones has identified numerous mitigating factors, other aggravating factors played a role in the district court's sentencing decision. The district court noted Jones' prior convictions (some of which were violent), the need to promote respect for the law and to provide adequate deterrence, and perhaps most importantly, the serious nature of Jones' offense. Given all of the circumstances and the § 3553(a) factors, we cannot say the district court "exceeded the bounds of permissible choice." United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007) (quotation omitted).

## IV

AFFIRMED.

Entered for the Court

Carlos F. Lucero
Circuit Judge